187 F.3d 348 (4th Cir. 1999)
 THOMAS G. REINBOLD, individually, and as next friends of their minor children; JOAN B. REINBOLD, individually, and as next friends of their minor children; ALEXANDRA REINBOLD; BRANDELIN REINBOLD, Plaintiffs-Appellants,
v.
WAYNE K. EVERS, Commander, USN; RONALD D. HOLT, Lieutenant, (USN. ret.), Defendants-Appellees.
THOMAS B. REINBOLD; JOAN B. REINBOLD, individually and as next friends of their minor children, Alexandra Reinbold and Brandelin Reinbold, Plaintiffs-Appellants,
v.
UNITED STATES OF AMERICA; WILLIAM J. PERRY, Secretary of Defense; DIANA L. HEALY; JOHN M. SCHMIDT, individually and as employee of the National Security Agency; KENNETH MINIHAN, Lieutenant General, United States Air Force, Director, National Security Agency, in their official capacities; JOHN H. DALTON, Secretary of the Navy, in his official capacity; TWO UNKNOWN NAMED NON-COMMISSIONED LAW ENFORCEMENT OFFICERS, INDIVIDUALLY AND AS MEMBERS OF THE UNITED STATES NAVY; U.S. DEPARTMENT OF DEFENSE; NATIONAL SECURITY AGENCY; UNITED STATES DEPARTMENT OF THE NAVY, Defendants-Appellees,
and
WAYNE K. EVERS, Commander; RONALD D. HOLT, Lieutenant, Defendants.
 No. 98-1896 (CA-97-101-2) No. 98-2780 (CA-96-1099-MJG).
 UNITED STATES COURT OF APPEALS, FOR THE FOURTH CIRCUIT.
 Argued: June 11, 1999.
Decided: August 5, 1999.
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Elkins.
 Robert Earl Maxwell, Senior District Judge.
 Appeal from the United States District Court for the District of Maryland, at Baltimore.
 Marvin J. Garbis, District Judge. [Copyrighted Material Omitted]
 COUNSEL ARGUED: Rex L. Fuller, III, LAW OFFICES OF REX L. FULLER, III, Chesapeake Beach, Maryland, for Appellants. Katherine Stelle Gruenheck, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. ON BRIEF: Frank W. Hunger, Assistant Attorney General, David W. Ogden, Acting Assistant Attorney General, William D. Wilmoth, United States Attorney, Lynne A. Battaglia, United States Attorney, Freddi Lipstein, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.
 Before WILKINS and HAMILTON, Circuit Judges, and JACKSON, United States District Judge for the Eastern District of Virginia, sitting by designation.Affirmed by published opinion. Judge Hamilton wrote the opinion, in which Judge Wilkins and Judge Jackson joined.
 OPINION
 HAMILTON, Circuit Judge:
 
 
 1
 Thomas G. Reinbold (Reinbold)[1] filed this action against the United States, the United States Department of Defense (DOD), the National Security Agency (NSA), the United States Navy (Navy),[2] and four individual officials of the Navy and NSA (Commander Wayne K. Evers (Evers) (Navy ret.), Lieutenant Ronald D. Holt (Holt) (Navy ret.), Diana L. Healy (Healy) (NSA), and Dr. John M. Schmidt (Dr. Schmidt) (NSA)) alleging, inter alia, that the defendants conspired to unlawfully search and seize, and that Holt and Evers did unlawfully search and seize, him in violation of his rights guaranteed under the Fourth Amendment to the United States Constitution.[3] See Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) (holding that an independent cause of action for monetary damages exists against federal officials, acting under color of federal law, who violate an individual's constitutional rights). Reinbold also alleged that the defendants covered up their conspiracy by placing false psychological evaluations and incident reports in his records, possessed and maintained by the NSA. All of Reinbold's claims against all defendants were disposed of through pre-trial motions, and Reinbold now appeals those dispositions. For the reasons that follow, we affirm.
 
 I.
 
 2
 Reinbold is an employee of the NSA. In January 1992, Reinbold was assigned to the Naval Security Group (NAVSECGRU) at Sugar Grove, West Virginia (Sugar Grove), where he worked as a Contracting Officer Representative Technical (COR-T). As a COR-T, Reinbold was responsible for: (1) tasking the on-site maintenance and engineering contractors; (2) evaluating the performance of contractors; and (3) assigning scores to the contractors' evaluation results.
 
 
 3
 Pursuant to the Internal Security Act of 1950 (ISA), see 50 U.S.C. § 781 et seq., Reinbold, as well as each NSA employee, was required to satisfy mandatory security standards and be cleared for access to sensitive compartmented information (an SCI security clearance). See 50 U.S.C. §§ 831-34. An SCI security clearance allows NSA employees access to information about sophisticated systems for collecting intelligence data as well as information actually collected. An SCI security clearance is only granted when "clearly consistent with national security." 50 U.S.C. § 831. The criteria for access to SCI materials are established by the Director of the Central Intelligence Agency (CIA). See 50 U.S.C. § 403 et seq. A document issued by the Director of the CIA on January 22, 1992, states that any individual considered for an SCI security clearance will be rigorously investigated and must be "stable, trustworthy, reliable, of excellent character, judgment and discretion, and of unquestionable loyalty to the United States." (S.J.A. 294a).[4] Any doubts regarding an applicant's qualifications for an SCI security clearance must be resolved in favor of national security. See 50 U.S.C. #8E8E # 831-34. Further, an NSA employee's failure to maintain his or her SCI security clearance is grounds for removal from his or her position with the NSA. See id.
 
 
 4
 Individuals who are granted SCI security clearance are subject to briefings and debriefings to inform them of the security requirements, restrictions, and obligations that accompany their SCI security clearance. Briefings and debriefings occur: (1) when an individual is initially indoctrinated; (2) as periodic awareness enhancement is deemed necessary, timely, or appropriate; and (3) upon termination of an individual's SCI security clearance. In addition, debriefings can occur when any situation arises "for which a special briefing/debriefing is required by the department/agency." (J.A. 303). In addition, individuals who possess an SCI security clearance are subject to procedures, such as NSA/Central Security Service Regulation (NSA/CSS Reg.) No. 121-18, that govern access to sensitive compartmented information. NSA/CSS Reg. No. 121-18 provides, in relevant part, that:
 
 
 5
 6. Government furnished desks, safes, file cabinets, lockers, and other containers provided for the use of personnel assigned in controlled areas are for official use only. As such, they are subject to search under the following conditions: a. During the course of an official investigation where a search of a specific container could assist the investigation;
 
 
 6
 b. During after-hours security inspections whenever a lockable container is found improperly secured; or
 
 
 7
 c. By a supervisor or designee for official purposes in the absence of the employee to which it is assigned.
 
 
 8
 * * *
 
 
 9
 16. The [Chief of the Office of Security] is responsible for:
 
 
 10
 * * *
 
 
 11
 c. The conduct of limited physical searches of persons, property, or vehicles upon entry to, while within, or upon exit from a controlled area.
 
 
 12
 (1) Searches may be performed to locate prohibited items and to preclude the inadvertent and unauthorized removal of controlled items or other unclassified government property.
 
 
 13
 (2) Searches of property will be limited to that in a person's possession or control, and may include all paper items, boxes, briefcases, handbags, and similar containers.
 
 
 14
 (J.A. 320-324). In addition to these directives, a sign at the entrance to the Operations Site at Sugar Grove, at which Reinbold worked, stated: "WARNING RESTRICTED AREA KEEP OUT. AUTHORIZED PERSONNEL ONLY. AUTHORIZED ENTRY INTO THIS RESTRICTED AREA CONSTITUTES CONSENT TO SEARCH OF PERSONNEL AND THE PROPERTY UNDER THEIR CONTROL. INTERNAL SECURITY ACT OF 1950 SECTION 21 50 U.S.C. 797." (J.A. 326).
 
 
 15
 Reinbold alleges that since he began work at Sugar Grove in January 1992, Navy managerial personnel interfered with the performance of his COR-T duties and the process of evaluating contractor performance. Reinbold further alleges that in July 1992, when Evers joined Sugar Grove as the officer in charge of the NAVSECGRU Detachment, he immediately attempted to interfere with Reinbold's duties. In October 1992, Evers was promoted to the position of base commander at Sugar Grove and, as Reinbold contends, began to extend his influence over Reinbold's COR-T duties by pressuring Reinbold to alter contractor performance evaluations. Reinbold also alleges that Evers himself altered contractor performance evaluations "by removing text in direct conflict with contracting regulations." (J.A. 21). Reinbold alleges that, while he did not cooperate with Evers' efforts to alter evaluations, he did permit his reports to be edited as long as the content or meaning was not changed.
 
 
 16
 In June 1993, Reinbold's supervisor, an NSA Work Center Chief, Healy, with the assistance of Evers, compelled Reinbold to undergo a psychological evaluation. Dr. Schmidt, the NSA psychologist who performed Reinbold's evaluation, concluded that Reinbold did not present a mental health or security risk.
 
 
 17
 Reinbold alleges that Evers' attempts to alter Reinbold's evaluations of government contractors persisted. In response to Reinbold's concerns about Evers' continuing conduct, Reinbold met with Captain Michael Kennedy (Kennedy) of the NAVSECGRU chaplain's office, first in January 1994, and again on February 18, 1994. Kennedy had previously represented to Reinbold that he had experience with government contracts and Reinbold believed Kennedy could be of assistance to him. During their meeting on February 18, 1994, Reinbold presented Kennedy with a written statement, dated February 17, 1994, detailing Evers' attempts to alter Reinbold's contractor evaluations and Evers' attempts to intimidate Reinbold into acquiescence. According to Reinbold, Kennedy encouraged Reinbold to file a complaint with the NAVSECGRU Inspector General (IG). Reinbold claims that he tried to file a complaint with the NAVSECGRU IG's office himself but that his "NSA superiors" refused to forward it. (J.A. 19). Consequently, on February 25, 1994, Kennedy filed Reinbold's complaint with the NAVSECGRU IG's office. On that same day, Reinbold received a call at his home from Captain Hal Hardaway (Hardaway) of the NAVSECGRU IG's office to schedule a meeting.
 
 
 18
 The next day, February 26, 1994, Reinbold met with Hardaway at a hotel in Arlington, Virginia. Reinbold informed Hardaway about Evers' attempts to "downgrade and detract" from Reinbold's contractor performance evaluations. (J.A. 21). Hardaway indicated to Reinbold that he would investigate his complaint.
 
 
 19
 On March 28, 1994, after concerns had been raised about Reinbold's judgment, reliability, and ability to protect classified information, the NSA suspended Reinbold's SCI security clearance. Holt, a lieutenant in the Navy stationed at Sugar Grove, informed Reinbold that his SCI security clearance was suspended and, pursuant to regulations, Holt debriefed Reinbold. After debriefing Reinbold, and with the assistance of two armed Navy enforcement officers, Holt escorted Reinbold from Sugar Grove. During his removal from Sugar Grove, Reinbold was refused permission to return to his work space to obtain his personal effects.
 
 
 20
 After his removal from Sugar Grove, Reinbold was placed in a temporary detailee position (and forbidden access to classified information) at the NSA's headquarters at Ft. Meade, Maryland (Ft. Meade).[5] While working at Ft. Meade, Reinbold underwent a series of psychological evaluations performed by Dr. Schmidt, the same psychologist who evaluated Reinbold in June 1993. From March through July 1994, Dr. Schmidt evaluated Reinbold and concluded that Reinbold was delusional with paranoia-like symptoms. Reinbold alleges that Dr. Schmidt reached his conclusions based, in part, on false information provided by Evers and Healy.
 
 
 21
 While Reinbold was under evaluation by Dr. Schmidt, an NSA security investigator interviewed Reinbold. The security investigator also traveled to Sugar Grove where he interviewed Navy, NSA, and contractor personnel. Based on all of his interviews, the security investigator prepared a report of investigation (ROI). This ROI, Dr. Schmidt's diagnosis, and Reinbold's refusal to undergo further psychological evaluation and treatment, led the NSA to propose, on June 3, 1994, that Reinbold's SCI security clearance be permanently revoked, pending an administrative appeal. This proposed action by the NSA was memorialized in a letter and sent to Reinbold. Following the NSA's proposed revocation of Reinbold's SCI security clearance, the NSA planned to permanently discharge Reinbold from his employment with the NSA, citing Reinbold's failure to meet a mandatory condition of his employment, maintaining his SCI security clearance.
 
 
 22
 In August 1994, Reinbold reviewed his records at the NSA. According to Reinbold, he discovered many fabricated reasons for his removal. Healy recorded that Reinbold had complained of financial trouble, that he had acknowledged dissatisfaction with his job, that he was a danger to himself and others, that he did not seem to know what his job as a COR-T was, that he believed the Navy was "out to get him," and that Reinbold had said "if [he] was going down, [he] would take everyone with him." (J.A. 22). Additionally, Dr. Schmidt recorded that his evaluations of Reinbold showed him to be paranoid and delusional. Consequently, in July and August 1994, Reinbold filed a request under the Privacy Act to alter and amend his records. While many of the alterations Reinbold requested were minor (e.g., "Report states I am 42; however, I am 43, as I indicated on the 14 July evaluation." (J.A. 177)), some were substantive. Significantly, Reinbold requested that the NSA expunge from his records: (1) Dr. Schmidt's psychological evaluation of him; (2) Healy's statement regarding his behavior; and (3) Holt and Evers' incident reports, which detail his removal from Sugar Grove.
 
 
 23
 Reinbold then took an administrative appeal of the NSA's proposed revocation of his SCI security clearance. While his appeal was pending, Reinbold continued working as an NSA detailee at Ft. Meade. A hearing was held on September 7, 1995. On September 29, 1995, the administrative panel issued its ruling which concluded that: (1) the revocation of Reinbold's SCI security clearance was without justification; (2) Reinbold was entitled to have his SCI security clearance restored; and (3) Reinbold should be reinstated at the NSA.
 
 
 24
 In accord with the ruling by the administrative panel, the NSA restored Reinbold's SCI security clearance on September 29, 1995. The NSA also placed Reinbold on permanent duty at Ft. Meade. On April 10, 1996, Reinbold filed this action (No. 98-2780) against the United States, the Agencies, Evers, Holt, Healy, and Dr. Schmidt, in the United States District Court for the District of Maryland. See 28 U.S.C. § 1331. In his complaint, Reinbold alleged, inter alia, that a conspiracy existed among the defendants to deprive him of his SCI security clearance in retaliation for his filing a complaint with the NAVSECGRU IG's office and as a pretext for seizing and searching him and his work space at Sugar Grove. Reinbold alleged that these actions constituted an unreasonable search and seizure in violation of his rights as guaranteed under the Fourth Amendment to the United States Constitution. Reinbold further alleged that the defendants covered-up their conspiracy by placing false psychological evaluations and incident reports in his NSA records.
 
 
 25
 On August 21, 1996, Reinbold filed an amended complaint. Reinbold's amended complaint contained the following claims against all of the defendants: (1) a Bivens claim alleging a constitutional tort under the Fourth Amendment; (2) a claim under the Federal Tort Claims Act (FTCA), see 28 U.S.C. § 1346(b) and § 2671 et seq.; (3) state common law tort claims; (4) claims assistance under the Federal Employees Compensation Act (FECA), see 5 U.S.C. § 8101 et seq.; (5) a claim under the Privacy Act, see 5 U.S.C. § 552a; (6) a claim under the Rehabilitation Act, see 29 U.S.C.§ 706 et seq.; and (7) a claim under the Administrative Procedure Act (APA), see 5 U.S.C. § 701 et seq. Reinbold's complaint alleged that the unlawful and unconstitutional actions by the defendants resulted in: (1) painful physical injuries; (2) loss of consortium with his wife, Joan B. Reinbold; and (3) loss of companionship and guidance with and to his children, Alexandra and Brandelin Reinbold, as a result of Reinbold's reassignment to Ft. Meade.[6] For relief, Reinbold sought reinstatement in his job at Sugar Grove and $30 million in damages.
 
 
 26
 On February 6, 1997, the Maryland district court: (1) dismissed Reinbold's constitutional tort claim under the Fourth Amendment only as to the Agencies and the United States, but not the individual defendants;[7]. (2) dismissed Reinbold's FTCA claim as to all defendants; (3) dismissed Reinbold's state common law tort claims as to all defendants; (4) dismissed Reinbold's FECA claim as to all defendants; (5) dismissed Reinbold's Rehabilitation Act claim as to all defendants; and (6) dismissed Reinbold's APA claim as to all defendants. After this order by the Maryland district court, only Reinbold's constitutional tort claims against the individual defendants and his Privacy Act claim against the Agencies, which alleged that the NSA refused to alter or amend the allegedly inaccurate information contained in Reinbold's records, remained. Further, the Maryland district court ordered Reinbold to produce a more definite statement of his Privacy Act claim.
 
 
 27
 On February 18, 1997, Reinbold filed a more definite statement of his Privacy Act claim, which also amended his complaint to add a second claim under the Privacy Act alleging that the Agencies failed to make a prompt determination regarding Reinbold's requests for amendment of his records (the delay claim). See 5 U.S.C. § 552a(g)(1)(D).
 
 
 28
 On June 11, 1997, approximately three years after Reinbold made his Privacy Act request to amend his records, and after amending his complaint to include a delay claim under the Privacy Act, the NSA determined that Reinbold's records accurately reflected the opinions and interpretations of the reporting officials. And while the NSA made the vast majority of the changes that Reinbold requested to correct factual inaccuracies in his records (e.g. , "Report states I am 42; however, I am 43, as I indicated on the 14 July evaluation." (J.A. 177)), the NSA refused to expunge from Reinbold's records: (1) Dr. Schmidt's psychological evaluation of Reinbold; (2) Healy's statement regarding Reinbold's behavior; or (3) Holt and Evers' incident reports, which detail Reinbold's removal from Sugar Grove. Reinbold requested an administrative appeal of the NSA's decision regarding his Privacy Act requests; on appeal, the NSA denied Reinbold his requested relief.
 
 
 29
 On July 23, 1997, the Maryland district court dismissed Evers and Holt as defendants for lack of personal jurisdiction. By motion dated October 23, 1997, Reinbold requested an interim award of attorneys' fees under the Privacy Act. See 5 U.S.C. § 552a(g)(2)(B). The Maryland district court denied Reinbold's request.
 
 
 30
 On July 14, 1998, the Maryland district court dismissed Reinbold's complaint against the two remaining individual defendants, Healy and Schmidt, for lack of subject-matter jurisdiction under Department of Navy v. Egan, 484 U.S. 518 (1988) (holding that courts may not review security clearance decisions or revocations), and its progeny. In that same order, the Maryland district court dismissed Reinbold's Privacy Act claim that was based upon the NSA's refusal to alter or amend the allegedly incorrect information contained in Reinbold's records. See Fed. R. Civ. P. 12(b)(6). On November 19, 1998, the Maryland district court granted the Agencies' motion for summary judgment on Reinbold's delay claim under the Privacy Act. See Fed. R. Civ. P. 56.
 
 
 31
 Reinbold noticed a timely appeal from the orders of the Maryland district court asserting error in the: (1) dismissal of Healy and Schmidt based upon Egan; (2) dismissal of his Privacy Act claim that was based upon the NSA's refusal to alter or amend his records; (3) grant of summary judgment in favor of the Agencies on his Privacy Act claim based upon the NSA's delayed response to his Privacy Act request; and (4) denial of his motion requesting interim attorneys' fees under the Privacy Act.
 
 
 32
 On November 12, 1997, Reinbold filed a Bivens action against Evers and Holt, who were dismissed by the Maryland district court based on lack of personal jurisdiction, in the United States District Court for the Northern District of West Virginia (No. 98-1896), alleging that both Holt and Evers violated Reinbold's rights in violation of the Fourth Amendment to the United States Constitution.
 
 
 33
 On March 16, 1998, Holt and Evers moved to dismiss Reinbold's complaint for lack of subject-matter jurisdiction, see Federal Rule of Civil Procedure 12(b)(1), and, alternatively, to dismiss Reinbold's complaint for failure to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(6). Specifically, Holt and Evers' motion to dismiss contained four main arguments: (1) Reinbold's claims were time-barred as the applicable statute of limitations under West Virginia law is two years, see W. Va. Code § 55-2-12; (2) the West Virginia district court lacked subject-matter jurisdiction over Reinbold's claims under Egan because Reinbold's complaint involved a dispute over Reinbold's security clearance, see Egan, 484 U.S. at 518; (3) even if the West Virginia district court possessed subject-matter jurisdiction, Reinbold has failed to state a claim upon which relief could be granted; and (4) that the claims against Holt and Evers in their official and individual capacities are barred by the doctrine of qualified immunity.
 
 
 34
 On May 29, 1998, the West Virginia district court heard oral arguments on Holt and Evers' motion to dismiss Reinbold's complaint. After hearing from both parties, the West Virginia district court granted Holt and Evers' motion to dismiss Reinbold's complaint upon the sole ground that Reinbold's complaint was filed beyond the twoyear statute of limitations. Reinbold noticed a timely appeal of the West Virginia district court's grant of Holt and Evers' motion to dismiss.
 
 II.
 
 35
 We first address whether we have subject-matter jurisdiction under Egan to entertain Reinbold's Bivens claim against Evers, Holt, Healy and Dr. Schmidt.[8]
 
 
 36
 In Egan, the Supreme Court determined that the Merit Systems Review Board's denial of a security clearance to a civilian laborer, due to a prior criminal record and admitted alcohol abuse, was a nonjusticiable issue and that the federal courts were without subjectmatter jurisdiction to review such decisions by a government agency. See 484 U.S. at 521.
 
 
 37
 The Supreme Court reasoned that the President is the"Commander in Chief" of the United States and, as such, the authority to "classify and control access to information bearing on national security . . . flows" from the Executive Branch. Id. at 527. The Supreme Court recognized the Executive Branch's "`compelling interest' in withholding national security information from unauthorized persons in the course of executive business," id., and stated that for:
 
 
 38
 "reasons . . . too obvious to call for enlarged discussion," CIA v. Sims, 471 U.S. 159, 170 (1985), the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it. Certainly it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence. . . . [Further,] "there is a reasonable basis for the view that an agency head who must bear the responsibility for the protection of classified information committed to his custody should have the final say in deciding whether to repose his trust in an employee who has access to such information.'" Cole v. Young, 351 U.S. 536, 546 (1956).
 
 
 39
 Egan, 484 U.S. at 529. Accordingly, the Supreme Court declared that the approval, denial, or revocation of an individual's security clearance is within the Executive Branch's purview and"unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive [Branch] in military and national security affairs." Id. at 530.
 
 
 40
 Since the Supreme Court decided Egan, this circuit has taken the view that "unless Congress specifically has provided otherwise, the courts will not intrude upon the [Executive Branch's] authority to grant or deny access to national security information." Guillot v. Garrett, 970 F.2d 1320, 1324 (4th Cir. 1992); accord Becerra v. Dalton, 94 F.3d 145, 148-49 (4th Cir. 1996), cert. denied, 519 U.S. 1151 (1997); Jamil v. Secretary, Dep't. of Defense, 910 F.2d 1203, 1207-08 (4th Cir. 1990). Accordingly, under our circuit precedent, in the absence of a specific mandate from Congress providing otherwise, Egan deprives the federal courts of subject-matter jurisdiction to review an agency's security clearance decision.
 
 
 41
 While the principal holding of Egan is well-settled in this circuit, its scope is not. We have previously held that Egan bars judicial review of security clearance decisions for violations of the Rehabilitation Act, see Guillot, 970 F.2d at 1327, and for violations of Title VII.[9] See Becerra, 94 F.3d at 149. We have also previously decided that, because an individual does not have a property or liberty interest in a security clearance, Egan precludes a due process claim based upon an agency's security clearance decision. See Jamil, 910 F.2d at 1209. We have, however, stated that, despite Egan's admonition restraining judicial review, it is arguable that we could review an agency's security clearance decision in the limited circumstance where the agency's security clearance decision violated an individual's constitutional rights. See id.; but see Beattie v. Boeing Co., 43 F.3d 559, 566 (10th Cir. 1994) (holding that Egan precluded review of plaintiff's Bivens claim (based on the First Amendment) when the United States Air Force denied a security clearance to plaintiff because he had engaged in "anti-nuclear activities" and conversations with "citizens of the [former] Soviet Union."). Unfortunately for Reinbold, even if we were to recognize that, under Egan, we could review an agency's security clearance decision if that security clearance decision violated an individual's constitutional rights, he does not allege that the NSA's suspension of his SCI security clearance violated his constitutional rights.
 
 
 42
 Reinbold's constitutional tort claim against Evers, Holt, Healy, and Dr. Schmidt is based upon his allegation that Holt and Evers' seizing, debriefing, and ejecting him from the Sugar Grove facility violated his rights as guaranteed under the Fourth Amendment to the United States Constitution, and not that the suspension of his SCI security clearance amounted to a constitutional violation. Significantly, Reinbold neither challenges the validity or applicability of the procedures under which Holt and Evers acted to seize, debrief, and eject him from the Sugar Grove facility, nor claims that the procedures under which Holt and Evers acted to seize, debrief, and eject him from the Sugar Grove facility were disparately enforced against him. Further, Reinbold does not allege that Holt and Evers failed to follow the relevant procedures when they seized, debriefed, and ejected him from Sugar Grove. Rather, Reinbold argues that the defendants conspired to unlawfully search and seize, and that Holt and Evers did unlawfully search and seize, him in violation of his rights guaranteed under the Fourth Amendment to the United States Constitution. Accordingly, Reinbold's Fourth Amendment claim is not premised on the proposition that the suspension of his SCI security clearance violated his constitutional rights, but rather is premised on the conduct of Holt and Evers following the suspension of his SCI security clearance. To be sure, no constitutional violation would have resulted if Reinbold's SCI security clearance was suspended but no seizure, debriefing, or ejection had taken place.
 
 
 43
 Reinbold essentially concedes that, to decide his Fourth Amendment claim on the merits, we must determine whether the NSA wrongly suspended his SCI security clearance. This is precisely the type of review that Egan prohibits, except arguably in the limited circumstance where the agency's security clearance decision violates an individual's constitutional rights. However, even if we were to recognize that, under Egan, we could review an agency's security clearance decision if that security clearance decision violated an individual's constitutional rights, Reinbold has failed to demonstrate that the NSA's suspension of his SCI security clearance violated his constitutional rights. Accordingly, we affirm the Maryland district court's grant of Healy and Dr. Schmidt's motion to dismiss Reinbold's constitutional tort claim and affirm the West Virginia district court's dismissal of Reinbold's complaint against Holt and Evers based on a lack of subject-matter jurisdiction.[10]
 
 III.
 
 44
 Reinbold also appeals the Maryland district court's (No. 98-2780) disposition of his two Privacy Act claims and his request for an interim award of attorneys' fees under the Privacy Act.[11] In his complaint, Reinbold alleged that the Agencies refused to correct his records as he requested under the Privacy Act. See 5 U.S.C. § 552a(g)(1)(A). Reinbold also amended his complaint to include a second claim under the Privacy Act alleging that the Agencies did not promptly respond to his Privacy Act requests for corrections to his records. See 5 U.S.C. § 552a(g)(1)(D). Finally, Reinbold requested an interim award of attorneys' fees under the Privacy Act. See 5 U.S.C. § 552a(g)(2)(B).[12]
 
 
 45
 The Privacy Act allows Reinbold access to records"pertaining to him" that are contained in an agency's system of records, 5 U.S.C. § 552a(d)(1), and allows him the right to request amendment to any record that he believes is not "accurate, relevant, timely, or complete." 5 U.S.C. § 552a(d)(2)(B)(i). An agency must acknowledge an individual's request for amendment within ten working days, see 5 U.S.C. § 552a(d)(2)(A), and must promptly either make the corrections requested or advise the individual of the agency's refusal to make the amendments. See 5 U.S.C. § 552a(d)(2)(B)(i) (B)(ii). An individual may request an administrative appeal of an agency's refusal to amend his records, and the agency has thirty working days (or longer, if extended for good cause by the agency head) to conduct an administrative review. See 5 U.S.C. § 552a(d)(3). If the agency denies the relief requested in the administrative appeal, the individual is entitled to place a concise statement of his disagreement in his file. See 5 U.S.C. § 552a(d)(3). If the agency fails to comply with these requirements, the individual is empowered to bring suit in federal court. See 5 U.S.C. § 552a(g)(1)(A) (1)(D).
 
 
 46
 A. Reinbold's Requests To Correct His Records
 
 
 47
 Reinbold claims that the Maryland district court erred when it dismissed his claim that the Agencies failed to review and act upon his request to alter his records under the Privacy Act. Reinbold made this claim under § 552a(g)(1)(A) of the Privacy Act which states that an individual may file suit in federal court "[w]henever any agency . . . makes a determination under [the Privacy Act] not to amend an individual's record in accordance with his request, or fails to make such review in conformity with [the Privacy Act.]" 5 U.S.C. § 552a(g)(1)(A). We review the Maryland district court's dismissal of Reinbold's Privacy Act claim de novo. See Boring v. Buncombe County Board of Education, 136 F.3d 364, 367 (4th Cir.) (en banc), cert. denied, 119 S. Ct. 47 (1998).
 
 
 48
 While the Privacy Act permits an individual to contest the accuracy of the facts contained in an agency's administrative records, the Privacy Act does not permit an individual to force an agency to "rewrite history, changing the record in Orwellian fashion to pretend that it reached some other conclusion." See Douglas v. Agric. Stabilization and Conservation Serv., 33 F.3d 784, 785 (7th Cir. 1994). Further, the Privacy Act does not allow a court to alter records that accurately reflect an administrative decision,[13] nor the opinions behind that administrative decision, no matter how contestable the conclusions may be. Id. An individual who is unhappy with the opinions filed in his records can obtain relief by placing a concise statement in his records which sets forth his disagreement with the opinions contained therein. See 5 U.S.C. § 552a(d)(3).
 
 
 49
 While the NSA, the agency that possessed and maintained Reinbold's records, made the vast majority of the changes that Reinbold requested to correct factual inaccuracies in his records (e.g., "Report states I am 42; however, I am 43, as I indicated on the 14 July evaluation." (J.A. 177)), the NSA refused to expunge from Reinbold's records: (1) Dr. Schmidt's psychological evaluation of Reinbold; (2) Healy's statement regarding Reinbold's behavior; or (3) Holt and Evers' incident reports, which detail Reinbold's removal from Sugar Grove. Reinbold requested an administrative appeal of the NSA's decision regarding his Privacy Act requests; on appeal, the NSA denied Reinbold his requested relief.
 
 
 50
 The NSA did not violate the Privacy Act by refusing to expunge the material requested by Reinbold. The Privacy Act can be used to correct facts in Reinbold's records (e.g., Reinbold's age), if those facts are recorded erroneously. See Douglas, 33 F.3d at 785; see also White v. Office of Personnel Management, 787 F.2d 660, 662 (D.C. Cir. 1986). However, the Privacy Act does not allow a court to alter records that accurately reflect an administrative decision, or the opinions behind that administrative decision. See White, 787 F.2d at 662. Accordingly, if Dr. Schmidt determined that Reinbold was paranoid and delusional, the Agencies did not err when they recorded that he reached that conclusion, even if that opinion was in error. See id. The same rationale applies to Holt and Evers' incident reports and Healy's observations about Reinbold's behavior. These individuals' opinions may be subject to debate, but they are not subject to alteration under the Privacy Act as long as the opinions are recorded accurately. See Douglas, 33 F.3d at 785. In accordance with 5 U.S.C. § 552a(d)(3), Reinbold was invited by the NSA to file a statement in his records expressing his disagreement with the opinions of Evers, Holt, Healy, and Dr. Schmidt. Reinbold did so.
 
 
 51
 By using the Privacy Act in an attempt to expunge the opinions of Evers, Holt, Healy, and Dr. Schmidt from his records, Reinbold essentially attempts to relitigate the NSA's decisions through the Privacy Act. The Privacy Act cannot be used for such a purpose. See Douglas, 33 F.3d at 785; Pellerin v. Veterans Admin., 790 F.2d 1553, 1555 (11th Cir. 1986); White v. United States Civil Serv. Comm'n, 589 F.2d 713, 715 (D.C. Cir. 1979). Accordingly, because Reinbold's Privacy Act requests sought to correct opinions and not facts, the Maryland district court correctly dismissed Reinbold's Privacy Act claim. See 5 U.S.C. § 552a(g)(1)(A).
 
 B. Reinbold's Delay Claim
 
 52
 Reinbold also appeals the Maryland district court's grant of the Agencies' motion for summary judgment on Reinbold's delay claim under the Privacy Act. We review the Maryland district court's grant of summary judgment in favor of the Agencies de novo. See Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co., 32 F.3d 120, 123 (4th Cir. 1994).
 
 
 53
 For Reinbold to prevail on his claim that the NSA did not promptly respond to his Privacy Act requests to correct his records, he must prove that: (1) there was a delay; (2) he was adversely affected by the delay, see 5 U.S.C. § 552a(g)(1)(D); and (3) the Agencies' inaction was "intentional" or "willful." See 5 U.S.C. § 552a(g)(4).[14]
 
 
 54
 Even though the NSA concedes that it did not promptly respond to Reinbold's Privacy Act request, Reinbold cannot recover damages under his delay claim unless he proves the two other elements. Reinbold failed to bring forward any evidence that the NSA acted in a manner which was "intentional or willful." Id. Reinbold's failure to bring forward any evidence of intent or willfulness is fatal to his delay claim under the Privacy Act. Further, the Agencies brought forward evidence that Reinbold's Privacy Act request was complex and the NSA, the agency in charge of Reinbold's records, was experiencing a staffing shortage which led to the delayed response to Reinbold's Privacy Act request. This evidence was unrebutted. The mere fact that the NSA delayed in responding to Reinbold's Privacy Act request, without any evidence of intent or willfulness on its part, is insufficient to maintain Reinbold's delay claim in the face of a motion for summary judgment. See Chapman v. Nat'l Aeronautics & Space Admin., 736 F.2d 238, 242-43 (5th Cir. 1984) (holding that a delay, without any evidence of willfulness, is inadequate to recover damages under the Privacy Act). Accordingly, we hold that the Maryland district court properly granted the Agencies' motion for summary judgment on Reinbold's delay claim under the Privacy Act.
 
 
 55
 C. Reinbold's Request For Interim Attorneys' Fees
 
 
 56
 Finally, Reinbold appeals the Maryland district court's denial of his motion to recover interim attorneys' fees under the Privacy Act.[15] As discussed above, Reinbold, in his original complaint, alleged that the Agencies failed to make a determination on his Privacy Act request. See 5 U.S.C. § 552a(g)(1)(A). In his motion for an interim award of attorneys' fees, Reinbold alleged that, due to the subsequent decision by the NSA on Reinbold's Privacy Act request, his claim under the Privacy Act was the catalyst that caused the NSA to act on his Privacy Act request and, therefore, he "substantially prevailed" and is entitled to attorneys' fees. If the district court denies a prevailing party's motion for attorneys' fees, we review such denial for abuse of discretion. See McDonnell v. Miller Oil Co., 134 F.3d 638, 640 (4th Cir. 1998). However, if the district court determines, as a matter of law, that a party is not a prevailing party, we review the district court's determination de novo. See Shaw v. Hunt, 154 F.3d 161, 164 (4th Cir. 1998). Accordingly, because in this case the Maryland district court determined, as a matter of law, that Reinbold did not "substantially prevail" under the Privacy Act, we review the Maryland district court's determination de novo. See Shaw, 154 F.3d at 164; 5 U.S.C. § 552a(g)(2)(B).
 
 
 57
 To be eligible for fees and costs under 5 U.S.C.§ 552a(g)(1)(A) and (g)(1)(B), Reinbold must have "substantially prevailed." See 5 U.S.C. § 552a(g)(2)(B); see also Gowan v. United States Dep't of Air Force, 148 F.3d 1182, 1194-95 (10th Cir.), cert. denied, 119 S. Ct. 593 (1998). To determine whether Reinbold has substantially prevailed for purposes of obtaining attorneys' fees under the Privacy Act, we follow the lead of a number of our sister circuits and look to the attorneys' fee analysis under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(4)(E). See Gowan, 148 F.3d at 1195 (applying FOIA principles to determine whether plaintiff substantially prevailed under Privacy Act); Sweatt v. United States Navy , 683 F.2d 420, 423 (D.C. Cir. 1982) (per curiam) (same); Barrett v. Bureau of Customs, 651 F.2d 1087, 1088 (5th Cir. 1981) (same). If a determination is made that Reinbold has substantially prevailed, the court must then evaluate four factors to decide whether he is entitled to an award.[16] See Gowan, 148 F.3d at 1195.
 
 
 58
 To prove that he has substantially prevailed, Reinbold must establish that his Privacy Act claim was reasonably necessary and substantially caused the requested records to be released. See Gowan, 148 F.3d at 1195; Chesapeake Bay Found., Inc. v. Dep't of Agric., 11 F.3d 211, 216 (D.C. Cir. 1993); Maynard v. C.I.A., 986 F.2d 547, 568 (1st Cir. 1993). In other words, to determine whether Reinbold substantially prevailed, in the absence of a final judgment in his favor, is a question of causation--the lawsuit must have resulted in the release of records that would not otherwise have been released. See Weisberg v. United States Dep't of Justice, 745 F.2d 1476, 1496 (D.C. Cir. 1984). The second element of the inquiry--whether a party who has substantially prevailed is entitled to recover attorneys' fees--is not reached unless and until Reinbold has proved he has substantially prevailed. See Gowan, 148 F.3d at 1195; Maynard, 986 F.2d at 568.
 
 
 59
 Reinbold has not proved that he substantially prevailed on his Privacy Act claim. See 5 U.S.C. § 552a(g)(1)(A). Reinbold brought forth no evidence that his Privacy Act claim resulted in the release of his records which would not otherwise have been released. See Weisberg, 745 F.2d at 1496. While the NSA did release Reinbold's records subsequent to his filing his lawsuit in the Maryland district court, the mere filing of a claim under the Privacy Act in federal district court and subsequent compliance by an agency does not mean that the plaintiff substantially prevailed. See Maynard , 986 F.2d at 568.
 
 
 60
 In sum, Reinbold has not proved that his lawsuit was a catalyst for the NSA's action. The unrebutted evidence brought forth by the NSA demonstrates that the NSA's delay in responding to Reinbold's Privacy Act request was caused by a staffing shortage. Accordingly, we hold that the Maryland district court properly denied Reinbold's motion seeking to recover an interim award of attorneys' fees under the Privacy Act.
 
 IV.
 
 61
 For the reasons stated herein, the disposition of Reinbold's claims by both the Maryland district court and the West Virginia district court are affirmed.
 
 AFFIRMED
 
 
 Notes:
 
 
 [1]
 Reinbold filed suit on behalf of himself, individually, and as next friend to his two minor children, Alexandra Reinbold and Brandelin Reinbold. Reinbold's wife, Joan B. Reinbold, was also a party to the suit both individually and as next friend to the two minor children. For simplicity and ease of reading, we refer to the plaintiffs/appellants as "Reinbold."
 
 
 [2]
 Generally, throughout this opinion, we refer to the DOD, the NSA, and the Navy as "the Agencies."
 
 
 [3]
 Reinbold initially filed this action against all defendants in the United States District Court for the District of Maryland. On July 23, 1997, the Maryland district court dismissed both Holt and Evers based on lack of personal jurisdiction. Subsequently, on November 12, 1997, Reinbold filed a Bivens action against Holt and Evers in the United States District Court for the Northern District of West Virginia alleging that both Holt and Evers violated Reinbold's rights in violation of the Fourth Amendment to the United States Constitution. Both cases are now on appeal before this court. While the parties submitted separate briefs for each case, for purposes of oral argument and this opinion, the two cases have been consolidated.
 
 
 [4]
 The defendants filed a supplemental joint appendix that is hereinafter cited as "S.J.A." Because both Case No. 98-2780 and Case No. 98-1896 have been consolidated for purposes of this opinion, unless indicated otherwise, all citations are to the joint appendix and supplemental joint appendix in Case No. 98-2780.
 
 
 [5]
 Although Reinbold was transferred by the NSA from Sugar Grove, West Virginia, to Ft. Meade, Maryland, his family remained in West Virginia. Consequently, Reinbold worked in Maryland and traveled to West Virginia on weekends to be with his family.
 
 
 [6]
 Reinbold's complaint states that: [The defendants' actions] effectively separated Mr. Reinbold from his family, except for weekend visits, and forced him to bear the expense of two households . . . without adequate compensation. This caused . . . extreme mental and emotional stress for Mr. Reinbold, his wife, and his two children who were then three and six years old . . . . (J.A. 25). These allegations led to Reinbold's claims for loss of consortium with his wife and loss of companionship and guidance with and to his children.
 
 
 [7]
 While Bivens actions allow for recovery of money damages against federal officials who violate the United States Constitution in their individual capacities, Bivens does not allow for recovery of money damages, or suits in general, against the government itself. See Keene Corp. v. United States, 700 F.2d 836, 845 n.13 (2d Cir. 1983). Because the United States has not waived sovereign immunity in suits claiming constitutional torts, Reinbold's Fourth Amendment claim against the United States necessarily fails. See Radin v. United States, 699 F.2d 681, 684-85 (4th Cir. 1983). The district court correctly recognized this point.
 
 
 [8]
 It is axiomatic that Fourth Amendment rights are personal and may not be vicariously asserted. See United States v. Rusher, 966 F.2d 868, 874-75 (4th Cir. 1992). Accordingly, all claims brought by Joan Reinbold, that are based upon the Fourth Amendment, cannot be maintained due to her lack of standing. See id.
 
 
 [9]
 A number of circuits have reached similar conclusions. See Ryan v. Reno, 168 F.3d 520, 523 (D.C. Cir. 1999) (holding that security clearance decisions are non-reviewable under Title VII after Egan); Brazil v. United States Dep't of Navy, 66 F.3d 193, 196 (9th Cir. 1995) (same); Perez v. Federal Bureau of Investigation, 71 F.3d 513, 514-15 (5th Cir. 1995) (same); United States Info. Agency v. Krc , 905 F.2d 389, 395-97 (D.C. Cir. 1990) (holding that security clearance decisions are nonreviewable under the Foreign Service Act).
 
 
 [10]
 We note that our holding does not affect our authority to require an agency to follow its own regulations in making a security clearance decision and in dismissing an employee. See Jamil , 910 F.2d at 1208; accord Hill v. Dep't of Air Force, 844 F.2d 1407, 1412 (10th Cir. 1988) ("courts do have the power to compel agencies to follow their own regulations"). We also note that while the defendants argued Egan to the West Virginia district court, the West Virginia district court granted Holt and Evers' motion to dismiss based upon the expiration of the applicable West Virginia statute of limitations without reaching the defendants' Egan argument. See Fed. R. Civ. P. 12(b)(6). With respect to the West Virginia district court's ruling on statute of limitations grounds, because there is no statute of limitations for Bivens actions, the district court correctly looked to West Virginia law. See Wilson v. Garcia, 471 U.S. 261, 266-70 (1985) (holding that state's personal injury statute of limitations is most appropriate for § 1983 actions). The district court determined, and Reinbold does not dispute, that West Virginia's two-year, personal injury statute of limitations applies to Reinbold's Fourth Amendment claim. See W. Va. Code § 55-2-12(b). Reinbold also concedes that the West Virginia district court properly looked to federal law for the appropriate accrual standard. That standard was recently reiterated by an en banc decision of this court in Nasim v. Warden, Md. House of Correction, 64 F.3d 951, 955 (4th Cir. 1995) (en banc), cert. denied, 516 U.S. 1177 (1996), stating that "[u]nder federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Id. (citing United States v. Kubrick, 444 U.S. 111, 122-24 (1979)); see also Gould v. United States Dep't of Health & Human Servs., 905 F.2d 738, 742 (4th Cir. 1990) (en banc), cert. denied, 498 U.S. 1025 (1991). Applying the West Virginia statute of limitations, combined with the federal accrual standard, to Reinbold's complaint, it is apparent that the district court's analysis of the applicable West Virginia statute of limitations was correct. However, as discussed at length above, Egan deprived the West Virginia district court, as well as this court, of subject-matter jurisdiction. See Egan, 484 U.S. at 518. The West Virginia district court should have addressed the question of subject-matter jurisdiction before addressing the question of whether Reinbold's complaint was timely filed. See Steel Co. v. Citizens for a Better Environment, 118 S. Ct. 1003, 1012-16 (1998) (holding that when subject-matter jurisdiction does not exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause." (internal quotation marks omitted)).
 
 
 [11]
 Because there is nothing in the record to suggest that Reinbold's wife, Joan Reinbold, was involved in either his request to correct his records under the Privacy Act or his delay claim under the Privacy Act, see 5 U.S.C. § 552a(b) and (d), and Reinbold has never "been declared to be incompetent due to physical or mental incapacity or age by a court of competent jurisdiction," 5 U.S.C. § 552a(h), Joan Reinbold does not have standing to maintain a claim under the Privacy Act.
 
 
 [12]
 While Reinbold brought his Privacy Act claim against all of the defendants, the NSA is the agency that actually possessed and maintained Reinbold's records.
 
 
 [13]
 The Privacy Act supposes that there is a distinction between "records" and "decisions." Douglas, 33 F.3d at 785.
 
 
 [14]
 This court has recognized that the evidentiary standard for showing "willful or intentional" conduct under the Privacy Act is great -more than gross negligence. See Scrimgeour v. Internal Revenue, 149 F.3d 318, 326 (4th Cir. 1998). In Scrimgeour we stated:
 the standard for intentional or willful behavior under the Privacy Act has been articulated as "an act committed`without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act.'" [Waters v. Thornburgh, 888 F.2d 870, 875 (D.C. Cir. 1989)] (quoting Albright v. United States, 732 F.2d 181, 189 (D.C. Cir. 1984)). Id.
 
 
 [15]
 We assume, without deciding, that the Privacy Act allows for an interim award of attorneys' fees.
 
 
 [16]
 The four factors the court would look to are: "`(1) the benefit to the public, if any, derived from the case; (2) the benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in the law.'" Gowan, 148 F.3d at 1195 (quoting Aviation Data Serv. v. FAA, 687 F.2d 1319, 1321 (10th Cir. 1982)); see also S. Conf. Rep. No. 1200, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 6267, 6285, 6288 (indicating that Congress intended courts to consider these factors in determining whether to exercise their discretion to award attorneys' fees under the Privacy Act).