Alan J. WHITE, Appellant,

v.

OFFICE OF PERSONNEL
MANAGEMENT, et al.

Alan J. WHITE, Appellant,

v.

OFFICE OF PERSONNEL
MANAGEMENT, et al.

Nos. 84–5639, 85–5823.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 18, 1985.

Decided April 11, 1986.

As Amended April 11, 1986.

Alan J. White, pro se, in Nos. 84–5639 and 85–5823.

Scott T. Kragie, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on brief, for appellees in Nos. 84–5639 and 85–5823.

Before MIKVA and BORK, Circuit Judges, and SWYGERT*, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

These consolidated cases represent but the latest chapter in Alan White's protracted struggle with the Office of Personnel Management (OPM). OPM oversees the selection of administrative law judges employed by the federal government. White has been trying to become an administrative law judge since January 1975. After two unsuccessful applications, White turned to the judicial process in February 1977. Since that time this court has ruled

nine times in the matter of White versus the Office of Personnel Management, on more than one occasion disposing of consolidated appeals. White's suits have alleged violations of, *inter alia*, the Constitution, the Privacy Act, the Freedom of Information Act, the Administrative Procedure Act, and various regulations implementing these Acts. In the two cases at bar, White is suing for damages under the Privacy Act and for relief for alleged violations of his fifth amendment rights. Because we find that White is not entitled to damages under the Privacy Act and that his constitutional claims are entirely lacking in merit, we affirm the decisions of the district court.

## I. *No. 84–5639*

In White's first effort to litigate his non-selection as an administrative law judge, *White v. United States Civil Service Commission,* 589 F.2d 713 (D.C.Cir.1978), *cert. denied,* 444 U.S. 830, 100 S.Ct. 58, 62 L.Ed.2d 39 (1979), this court stated that

> At the core of this dispute are certain evaluations of appellant Alan J. White that were solicited [from his colleagues and superiors] by the United States Civil Service Commission [ (OPM is the successor to the Commission) ] in connection with appellant's application for the position of administrative law judge.... Appellant was apparently worried that, because he had experienced some employment difficulties ..., the evaluations might have mischaracterized the manner in which he had discharged his duties. He sought, therefore, to have these potentially damaging evaluations removed from his application records on file with the Civil Service Commission by pressing a claim under the Privacy Act of 1974. [5 U.S.C. § 552a.]

*Id.* at 714.

After eight years, the evaluations remain the core of the dispute in No. 84–5639, the first of the two consolidated cases we decide today. In his original suit, White al-

---

* Of the United States Court of Appeals for the Seventh Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d) (1982).

leged that retention of the disputed evaluations violated the Privacy Act's requirement that government records be accurate. See 5 U.S.C. § 552a(e)(5) & (g)(3) ("Each agency that maintains a system of records shall ... maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness and completeness as is reasonably necessary to assure fairness in the determination."). White believed that if the records were amended he could yet succeed in his failed applications for an administrative law judge position. Therefore, White sued under the Act to have his records amended and his application reconsidered. *See* 5 U.S.C. § 552a(g). The district court found against White. *White v. United States Civil Service Commission,* Civ.Act. No. 77–0274 (D.D.C. Dec. 7, 1977). We affirmed in part in the opinion quoted above.

In that opinion, this court decided that White's Privacy Act claim was premature. We affirmed the dismissal of the suit because White had not exhausted his available remedies under the Administrative Procedure Act. We held that "an assessment of Privacy Act claims is properly undertaken simultaneously with the District Court's review of the administrative action," *White,* 589 F.2d at 715 n. 4, and that Privacy Act litigation should not be allowed to circumvent the procedures established by the Administrative Procedure Act for correcting agency errors. Otherwise, the Congressional scheme devised for individuals "distressed by agency treatment of their employment applications" would be undermined. *Id.* at 714.

After something of a hiatus, White filed the lineal predecessor of No. 84–5639 in April of 1980. In his complaint, White sought damages under the Privacy Act with respect to the OPM's treatment of his first two administrative law judge applications. *See* 5 U.S.C. § 552a(g). White also sought prospective relief with respect to a third application he had submitted in March 1980. White wanted the OPM to review his new application without considering the disputed evaluations that had been the sub-

ject of the earlier litigation. The district court again ruled against White. *White v. Office of Personnel Management,* Civ.Act. No. 80–0932 (D.D.C. Oct. 16, 1980). On appeal from that decision (in an unpublished opinion) this court upheld the dismissal of White's claim for prospective relief. *White v. Office of Personnel Management,* 675 F.2d 1341 (D.C.Cir.1982). The claim was moot because OPM had agreed to consider White's 1980 application without the offending evaluations. However, the court remanded the cause to the district court for a determination of White's retrospective claim for damages. On remand, the district court decided that no violation of the Privacy Act had occurred. *See White v. Office of Personnel Management,* Civ.Act. No. 80–0932, slip op. (D.D.C. July 13, 1984). The current appeal in No. 84–5639 is from that decision.

■ The district court concluded that when OPM retained the disputed evaluations it had not violated the Privacy Act's requirement of accuracy. 5 U.S.C. § 552a(e)(5). The court held that the challenged evaluations necessarily contained opinions and subjective judgments and that, to satisfy the statutory command, the agency was not required to assure that all of these opinions and judgments were accurate. The court, however, did not absolve the agency of all responsibility for vetting the evaluations. It held that if a negative or damaging response were based on a demonstrably false premise, the agency would not be permitted to retain the evaluation. Where a subjective evaluation is based on a multitude of factors, however, and there are various ways of characterizing some of the underlying events, the court held that it is proper to retain and rely on it. We agree. The district court's reasoning is correct and in accord with governing precedent. *See Doe v. United States,* 781 F.2d 907 (D.C.Cir.1986); *R.R. v. Department of the Army,* 482 F.Supp. 770 (D.D.C.1980).

■ White argues on appeal that the district court failed to determine the matter

*de novo* and that if it had, it would have found in his favor. White is wrong, however, to assert that *de novo* review is required. Section 552a(g)(2)(A) of the Privacy Act calls for *de novo* review in § 552a(g)(1)(A) suits for *amendment* of records. In such a suit, the district court is not to assess the agency's review of the amendment request, but rather is to determine for itself whether the request should have been granted. In § 552a(g)(1)(C) and (g)(4) suits for damages, however, *de novo* review is not called for. Rather, the reviewing court is to inquire whether the standard articulated in § 552a(g)(1)(C) has been met. This inquiry is necessarily distinct from any undertaken by the agency—no damage claim can be brought directly against the agency—but it is not *de novo* review. The district court here properly inquired whether the records in question satisfied the appropriate test.

 In the district court, White also challenged the agency's use of evaluations solicited at the time of his first application in 1975, to evaluate his second (1976) application. White asserted that this violated the Privacy Act's requirement of timeliness, § 552a(e)(5) & (g)(1)(C), and led to a claim for damages against the government. The district court, however, held that the Act's requirement of timeliness was not violated. The district court reasoned that because the evaluations themselves contained information about the time period they covered, and because the OPM weighs the evaluations by recency, their use was in accord with the requirements of the Privacy Act. We agree. If records become too old, the Privacy Act *will* bar their use, but, for the reasons laid out by the district court, we do not find that the year-old evaluations here fall into that category. The Privacy Act does not require that agency records contain only information that is "hot off the presses." To hold that the Privacy Act bars the use of year-old evaluations, properly identified as such, would be an unwarranted intrusion on the agency's freedom to shape employment application procedures. As long as the nature and age of the information in the records is apparent, and the information is not so stale as to impede fairness, retaining information of various vintages is not precluded by the Act. We emphasize, however, that the determination whether records are in fact timely enough to assure fairness is inherently factual; our decision today is necessarily fact-bound.

White also argues that, under the due process clause of the fifth amendment, he was entitled to a hearing before either of his first two applications could be denied. White ingeniously turns this into a Privacy Act claim by asserting that the lack of a hearing, and the resultant lack of a record of such a hearing, renders the administrative record incomplete. He concludes that the OPM's records violated the Privacy Act's requirement of completeness and that he is entitled to damages. He is wrong for two reasons.

 First, the fifth amendment cases relied on by White simply do not support his assertion that he was entitled to a hearing. *See, e.g., Board of Regents v. Roth,* 408 U.S. 564 (1972); *Willner v. Committee on Character,* 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); *Schware v. Board of Bar Examiners,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); *Goldsmith v. Board of Tax Appeals,* 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494 (1926). The right to a hearing does not attach every time the government denies an employment application. Rather, before the right to a hearing attaches, a deprivation greater than the denial of a particular job application must be involved. Professor Tribe has characterized the Court's decisions in this area as reflecting a "revitalized concern to prevent at least procedurally unfair exclusions from the occupation or vocation of one's choice." L. TRIBE, AMERICAN CONSTITUTIONAL LAW 950 (1978). Nowhere in the Supreme Court's teachings on the subject do we find anything to suggest that denying a particular application for government employment constitutes such an exclusion. We conclude that White has failed to demonstrate that denying his application

to become an administrative law judge constitutes a deprivation of a constitutionally protected liberty or property interest. *See also infra,* part II.

The situation might be different if the United States had excluded White from all government employment. Here, however, the United States has not "condemn[ed] a man to a suspect class and the outer darkness, without the rudiments of a fair trial." *Peters v. Hobby,* 349 U.S. 331, 351, 75 S.Ct. 790, 99 L.Ed.2d 1129 (1955) (Douglas, J., concurring) (Civil Service Commission's Loyalty Review Board had barred Peters from all federal employment). Rather, the government merely found that a particular application for a particular job was unsuccessful.

■ Second, and more importantly, if White wishes to press a fifth amendment claim he should do so directly. Virtually everything the government does involves paperwork. Each time the government violates the Constitution, statutes or regulations, its paperwork could therefore be said to be "inaccurate" or "incomplete." Not every such violation, however, gives rise to a Privacy Act claim. To hold otherwise would transform every constitutional and statutory claim based on administrative action into a Privacy Act suit. *Cf. White v. United States Civil Service Commission,* 589 F.2d 713 (D.C.Cir.1978), *cert. denied,* 444 U.S. 830, 100 S.Ct. 58, 62 L.Ed.2d 39 (1979).

We do not find any of White's attacks on the district court judgment in No. 84–5639 compelling. We think the district court correctly decided that the challenged records did not violate the Privacy Act. Absent such a finding, damages are not in order.

## II. *No. 85–5823*

White also has had poor luck with his third (1980) application to become an administrative law judge. After that application was evaluated, White received a rating that rendered him eligible for listing on a register for selection as an administrative law judge by a particular federal agency. The rating was not high enough, however, that it resulted in his selection. White administratively appealed his rating. It was corrected and his name advanced on the register. But, although White was first rated in October of 1980, his appeal was not resolved until September 1983. After his appeal, White was listed in fifth place on the selection register; by August 1984, he had moved up to first place. In June 1984, however, OPM announced the abolition of the register and instituted a new application procedure. White's long climb to the top was thus nullified. White reapplied under the new procedures but so far has been unsuccessful in his quest to become an administrative law judge.

In March of 1985, White sued the OPM under the Administrative Procedure Act, the Declaratory Judgment Act and the Constitution, asking that the district court order OPM to grant him the benefit of his position on the abolished register. On May 29, 1985, the court dismissed the complaint for lack of jurisdiction. The court held that White's claims under the Administrative Procedure Act were unreviewable in light of the Civil Service Reform Act, and that his constitutional claims were not clearly enough articulated to sustain subject matter jurisdiction. In No. 85–5823, White appeals that dismissal.

■ The substance of White's argument seems to be that his initial qualification for the administrative law judge position (i.e., his listing on the register) is a liberty interest protected by the due process clause of the fifth amendment. This claim is not supported by precedent. White compares his case to cases where the Supreme Court has held that bar examiners and other governmental and governmentally-sanctioned regulatory bodies are required to accord procedural due process to applicants for licensing or certification. *See, e.g., Willner v. Committee on Character,* 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963) (Willner was deprived of due process when he was denied admission to the bar without a hearing); *Schware v. Board of Bar Examiners,* 353 U.S. 232, 77 S.Ct. 752, 1

L.Ed.2d 796 (1957) (evidence relied upon in denying Schware the opportunity to qualify as a lawyer was insufficient and the denial deprived Schware of due process). These decisions are founded on the Court's recognition of the individual's liberty interest in being free to practice his or her chosen profession. *See* L. TRIBE, *supra.* The Constitution requires that before an individual can be barred entirely from a vocation or a certain class of employment he must be afforded an opportunity to be heard. White argues that, because he had a protected liberty interest in his right to practice the profession of administrative law judge, the OPM was similarly required to afford him a hearing before it could abolish the selection register and institute a new application process. White's claim is without merit.

The premise of White's argument—that his placement on the selection register involves an initial qualification for a type of professional employment—is incorrect. White's placement on the register was part of the government's hiring process for a particular job. The government's relationship with an applicant for a particular job does not implicate the due process clause's protection of liberty interests.

Justice Douglas eloquently summarized the values and ideals the Court has protected by application of the due process clause:

> The right to work, I had assumed, was the most precious liberty that man possesses. Man has indeed as much right to work as he has to live, to be free, to own property. The American ideal was stated by Emerson in his essay on *Politics,* "A man has a right to be employed, to be trusted, to be loved, to be revered." It does many men little good to stay alive and free and properties, if they cannot work. To work means to eat. It also means to live. For many it would be better to work in jail than to sit idle on the curb. The great values of freedom are in the opportunities afforded man to press to new horizons, to pit his strength against the faces of nature, to match skills with his fellow man.

*Barsky v. Board of Regents,* 347 U.S. 442, 472, 74 S.Ct. 650, 666, 98 L.Ed.2d 829 (1954) (Douglas, J., dissenting). We see no danger that because White has thus far failed in his quest to become an administrative law judge that the state has interfered with the precious liberty that is his right to work. Simply denying White a particular government job does not mean the state has forced him "to sit idle on the curb." White fails to show that because the government is the only employer of administrative law judges it must comply with the same procedural due process requirements when hiring them as in licensing all the members of a particular profession. Thus, cases like *Schware* and *Willner* that deal with state regulation of eligibility for a particular type of professional employment are inapposite. We decline to find a constitutionally protected liberty interest in the freedom to pursue the profession of administrative law judge in the employ of the United States. We think that the concerns with the state's control over an individual's liberty that led to the decisions in the licensing cases are absent when the individual is simply seeking a particular government job.

Nor has White been debarred from all employment with the government—a circumstance that in our day might involve his constitutionally protected liberty interests. Thus, we should not be understood as in any way denigrating the importance of the government as employer. *See Peters v. Hobby, supra.* Nor are we denying the importance of the due process clause in regulating such an employment relationship once it is established. We simply do not believe that lawyers who wish to become administrative law judges with the United States possess a liberty interest in the mere pursuit of that employment.

In his reply brief and at oral argument, White changed his strategy somewhat and asserted that he had been deprived of a protected property interest. He argues that his spot on the selection register constituted such an interest. We find no more merit in this contention than we do in his

liberty interest argument. The Supreme Court has spoken clearly on the circumstances necessary to find a constitutionally protected property interest. *See, e.g., Cleveland Board of Education v. Loudermill,* —— U.S. ——, 105 S.Ct. 1487, 1491–93, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must instead, have a legitimate claim of entitlement to it.... Property interests ... are created and their dimensions are defined by existing rules or understandings that stem from a[ ] ... source such as state law—rules or understandings that support claims of entitlement to those benefits."). No protected property interest can be shown to exist here. We decline to find the government constrained to afford White a hearing before it may change its employment application procedures. While we can sympathize with White's frustration at having his position on the selection register abolished, we do not think the government is constrained to fulfill White's hope of selection.

Despite the lack of merit in White's constitutional claims, the district court was wrong to dismiss them for lack of *jurisdiction.* The district court relied on *Carducci v. Regan,* 714 F.2d 171 (D.C.Cir.1983). In that case, which involved a dismissal for failure to state a claim on which relief can be granted (Fed.R.Civ.P. 12(b)(6)), this court declined to address and resolve a constitutional issue because of grossly inadequate briefing by the parties on appeal. *See Carducci* at 177. Subsequently, in *Gray v. Office of Personnel Management,* 771 F.2d 1504 (D.C.Cir.1985), this court referred in *dicta* to the *Carducci* court's refusal to address a "bare-bones" assertion of constitutional violation. The opinion could be read as approving the action of a district court that declines to address a claim advanced only perfunctorily. However, the district court in *Gray* had dismissed the constitutional claim on the mer-

its. And the court of appeals rested its holding on a finding that the constitutional challenge was *moot. See id.* at 1513. Neither *Carducci* nor *Gray* said anything about jurisdiction. Rather, both involve the showing necessary to prevail on or continue to litigate a constitutional claim.

Thus the OPM's argument that White's "cavalier" attitude towards his constitutional claim, and his mere "peppering" of his complaint with references to the fifth amendment bring this case within *Carducci's* ambit is incorrect. The district court does not lack subject matter jurisdiction because a complaint does not fully set out the supporting precedent and legal theory behind a constitutional cause of action. The situation here is far removed from that of *Carducci.* In *Carducci* the court declined to decide an issue that was not briefed on appeal. The holding was merely an application of the well-settled principle that only those issues appealed will be considered by the court. (Except, of course, when the court's authority or power to resolve the dispute is called into question.)

However, because we find White's alleged constitutional claim to be so totally devoid of merit, and because the issue is purely a legal one, we see no need to remand this case to the district court. Although dismissal was on the wrong grounds, we affirm.

CONCLUSION

We are certain that this interlocking series of cases has gone on far too long. Having today canvassed the entire range of White's complaints against the government and found them wanting, we hope that this litigation can finally come to an end.

*Affirmed.*