# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

―――――

Argued December 1, 2006   Decided May 11, 2007

No. 05-5396

DOUGLAS J. MUELLER,
APPELLANT

v.

DONALD C. WINTER,
SECRETARY OF THE NAVY AND
DEPARTMENT OF NAVY,
APPELLEES

―――――

Appeal from the United States District Court
for the District of Columbia
(No. 04cv01711)

―――――

*Guy J. Ferrante* argued the cause and filed the briefs for appellant.

*Steven Ranieri*, Assistant U.S. Attorney, argued the cause *pro hac vice* for appellee. On the brief were *Kenneth L. Wainstein*, U.S. Attorney at the time the brief was filed, and *Michael J. Ryan* and *Kevin K. Robitaille*, Assistant U.S. Attorneys. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON, RANDOLPH, and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Lieutenant Commander Douglas Mueller challenges the Navy's refusal to remove an assertedly erroneous fitness report from his personnel record under both the Privacy Act, 5 U.S.C. § 552a, and the Administrative Procedure Act, 5 U.S.C. § 706. He also challenges the Navy's denial of his request to convene a special selection board under 10 U.S.C. § 628. The district court rejected each of Mueller's challenges, as do we.

I

Mueller is a Lieutenant Commander (LCDR) in the U.S. Navy Judge Advocate General's Corps. On November 16, 1999, Mueller received a fitness report (the "original fitness report") that was prepared by his "reporting senior," Rear Admiral (RADM) Donald Weiss. The report covered the period between November 1, 1998 and October 31, 1999, and is the principal subject of this appeal.

Fitness reports are prepared by reporting seniors annually and cover a one-year period for officers of Mueller's rank. *See* Bureau of Naval Personnel Instruction (BUPERSINST) 1610.10 at ¶¶ D-2, D-3. The reports are maintained for all Navy personnel and are meant to "reflect their fitness for the service and performance of duties." *Id.* at Introduction ¶ 1 (internal quotation marks omitted). Fitness reports "on officers . . . are used for many career actions, including selection for promotion, advanced training, specialization or subspecialization, and responsible duty assignments." *Id.*

The Bureau of Naval Personnel has promulgated detailed instructions directing reporting seniors as to how to prepare fitness reports. As is relevant to this appeal, blocks 33-39 on the report form require the reporting senior to rank the officer with respect to various "Performance Traits" -- for example, "Professional Expertise" and "Teamwork" -- each on a scale from 1.0 ("Below Standards") to 5.0 ("Greatly Exceeds Standards"), with 3.0 ("Meets Standards") as the midpoint. *See, e.g.*, Joint Appendix (J.A.) 39. "For the majority of Navy people, most of the trait grades should be in the 2.0 to 4.0 range." BUPERSINST 1610.10 at ¶ A-4. The reporting senior is also instructed to provide written comments on the officer's performance. Finally, the reporting senior must make a recommendation regarding promotion by checking one of five boxes, ranging from "Significant Problems" to "Early Promote." *See id.*; J.A. 40.

On the original fitness report, Admiral Weiss gave Mueller marks of 3.0 ("Meets Standards") in three categories, marks of 4.0 ("Above Standards") in another three, and a "Not Observed" mark in a final category, "Tactical Performance." J.A. 39-40. After commenting positively regarding Mueller, Weiss rated him "Must Promote," one level short of the highest promotion recommendation. J.A. 40. Although the report was generally quite favorable, it painted a somewhat less positive picture of Mueller than both the report that directly preceded it and the one that directly followed it.

Seventeen months after Mueller received the original fitness report, the Fiscal Year 2002 (FY-02) promotion board met. On April 17, 2001, the board -- which had before it the original fitness report as well as fitness reports for prior and subsequent periods -- did not select Mueller for promotion to the rank of Commander.

On January 14, 2002, eight months after the FY-02 board decided not to promote Mueller and more than two years after Weiss submitted the original fitness report, Mueller sent Weiss a letter, asking him for "support in modifying the marks" on the original fitness report. J.A. 41. Navy regulations allow a reporting senior to supplement an original fitness report with a new one. *See* BUPERSINST 1610.10 at ¶ P-4. Although the Navy generally will not accept a supplemental report submitted more than two years after the ending date of the original fitness report, *id.*, a reporting senior may request, and the Board may grant, a waiver of the filing deadline, *id.* at ¶ P-4(c). If a supplemental report is submitted and accepted, it is stored in the officer's record together with the original report, which remains unchanged unless the Navy alters or removes it as a result of an appeal. *Id.* at ¶ P-8(a).

On March 7, 2002, Weiss submitted a supplemental report, along with a request to waive the two-year filing deadline. The supplemental report raised three of Mueller's "Performance Traits" marks (for "Professional Expertise," "Mission Accomplishment and Initiative," and "Leadership") from 4.0 to 5.0, and a fourth mark (for "Teamwork") from 3.0 to 4.0. *Compare* J.A. 47-48, *with* J.A. 39-40; *see* J.A. 45. It retained Weiss' previous "Comments on Performance," but added the directive "Promote to Commander now." It also changed the promotion recommendation from "Must Promote" to "Early Promote," the highest recommendation. *Compare* J.A. 48, *with* J.A. 40. In an accompanying cover letter, Weiss wrote:

> On reflection, the marks I assigned on the original report when compared to the recorded comments on LCDR Mueller's performance and my recollection of the officer's performance were harsher than required. Therefore, I wish to change the marks to more

accurately represent the performance of the officer . . . .

J.A. 45. The Navy honored Weiss' request to waive the deadline and filed Weiss' supplemental report and cover letter in Mueller's personnel record, alongside the original fitness report.

Mueller next petitioned the Board for Correction of Naval Records (BCNR) to remove the original fitness report from his personnel record and to replace it with the supplemental report, pursuant to the Board's statutory authority "to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). Mueller argued that the original fitness report "did not fairly reflect a substantially accurate, complete and fair portrayal of [his] performance during the [covered] period." J.A. 35. Although Mueller acknowledged that both the original and supplemental reports were in his personnel record, he contended that "this practice leaves a record that a board member could, and probably would, construe as a flaw in [his] record," and that the promotion board "would likely surmise from their own experience that the change was at [his] request and even if [the board] did not view [his] prior report, that the prior entry was negative." J.A. 37.

On October 18, 2002, the Navy Personnel Command issued an advisory opinion to the BCNR. The opinion noted that the Navy "make[s] provisions for the submission of supplementary material concerning fitness reports so reporting senior[s] may clarify, amend, or correct a report already on file, not replace [it]. The reporting senior has submitted and we have accepted and filed the revised report." J.A. 49. The opinion also stated that "the petitioner has requested the replacement of his fitness report to enhance his opportunities for promotion. We do not support changes of record to improve [an] officer's opportunity

for promotion or career enhancement." *Id.* The opinion concluded that Mueller did "not prove the [original fitness report] to be unjust or in error," *id.*, and recommended that Mueller's "record remain unchanged," J.A. 50.

Concurring "with the comments contained in the advisory opinion," the BCNR denied Mueller's petition on January 21, 2003. J.A. 64. Because it was "unable to find specific information to justify the reporting senior's revision of [Mueller's] evaluation," the BCNR concluded that "the evidence submitted was insufficient to establish the existence of probable material error or injustice." *Id.*

On May 20, 2002, the same day that he petitioned the BCNR to remove the original fitness report from his record, Mueller also petitioned the Secretary of the Navy to convene a special selection board, pursuant to 10 U.S.C. § 628(b), to reconsider the promotion that the FY-02 promotion board had denied him. As in his petition to the BCNR, Mueller stated that the original fitness report was not accurate. He also noted that the FY-02 promotion board had not had access to Weiss' supplemental report, which was not submitted until after the FY-02 board made its decision. Thus, Mueller claimed that the action of the FY-02 board "involved a material error of fact," and that "the board lacked some material information for consideration." J.A. 67; *see* 10 U.S.C. § 628(b)(1) (authorizing the Secretary to convene a special selection board if "the action of the promotion board that considered the person . . . involved material error of fact," or "the board did not have before it for its consideration material information").

On January 21, 2003, the Secretary of the Navy denied Mueller's request for an FY-02 special selection board. The Secretary found that Mueller "did not exercise due diligence" in making sure that his record was complete before the FY-02

promotion board convened. J.A. 74. Thus, the Secretary concluded, "a special promotion selection board is not warranted." *Id.*

On January 16, 2004, Mueller submitted a request for reconsideration to the BCNR. The request asked that the Navy both remove the original fitness report from his record and convene "a special selection board for the FY-02 promotion board." J.A. 87; *see* J.A. 81-87. In support of his request, Mueller submitted a sworn statement from Admiral Weiss, stating that Weiss submitted the supplemental report "based upon new information that [he] received from both LCDR Mueller and from his direct supervisor," and that this "new information convinced [him] that the contested original fitness report was inaccurate and needed to be corrected." J.A. 88. Weiss also stated that the "original fitness report contained evaluation information based upon factual inaccuracies." *Id.* Weiss maintained that he "did not submit an amended fitness report simply because it would enhance LCDR Mueller's opportunity for promotion or career," but rather because he "received new and material evidence concerning LCDR Mueller's performance of duties that convinced [him] the original fitness report was in error at the time it was originally submitted." *Id.*

The BCNR denied Mueller's renewed request to remove the original fitness report from his record, stating that Mueller "provided no new and material evidence or other matter not previously considered," and noting that Weiss' sworn statement "gives no specific information to explain his decision to give [Mueller] a more favorable evaluation." J.A. 108. The Board also remained unconvinced that Mueller "could not have submitted a letter to [Weiss] before the [FY-02] promotion board met." J.A. 109.

On January 16, 2004, the same day that he filed his request for reconsideration with the BCNR, Mueller filed a request with the Navy Personnel Command to remove the original fitness report from his record pursuant to the Privacy Act, 5 U.S.C. § 552a, and the Navy's Privacy Act regulations, Secretary of the Navy Instruction (SECNAVINST) 5211.5D. The Navy denied Mueller's request on January 23, 2004, stating that record amendments under the Privacy Act "are limited to the correction of factual matters, not matters of opinion such as performance appraisals, grades and comments by the reporting senior." J.A. 111. Mueller appealed, and on August 17, 2004, the Secretary of the Navy denied his appeal.

Thereafter, Mueller filed a complaint in the United States District Court for the District of Columbia. The complaint alleged that: (1) the Navy erred in failing to remove the original fitness report from Mueller's record pursuant to the Privacy Act; (2) the BCNR's denial of his request to remove the report was arbitrary and capricious under the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A); and (3) the Navy's refusal to convene a special selection board for FY-02 was arbitrary, capricious, and unsupported by substantial evidence under 10 U.S.C. § 628(g). The district court granted summary judgment in favor of the Navy on all counts. *See Mueller v. England*, 404 F. Supp. 2d 51 (D.D.C. 2005). This appeal followed.

II

We begin with Mueller's claim that the Navy violated the Privacy Act by failing to remove the original fitness report from his personnel record. The Privacy Act provides that "[e]ach agency that maintains a system of records shall . . . maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably

necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). It permits an individual to "request amendment of a record pertaining to him" and requires the agency either to "make any correction" to the record or to "inform the individual of its refusal." *Id.* § 552a(d)(2). If the agency refuses to amend the record, the Act authorizes the individual to bring an action in district court. *Id.* § 552a(g)(1).

The Privacy Act generally directs the district court to review claims challenging an agency's refusal to correct records de novo. 5 U.S.C. § 552a(g)(2)(A); *see White v. Office of Pers. Mgmt.*, 787 F.2d 660, 663 (D.C. Cir. 1986). This court, in turn, reviews a district court's "grant of summary judgment *de novo*, applying the same standard as the district court." *McCready v. Nicholson*, 465 F.3d 1, 7 (D.C. Cir. 2006). The government contends that courts should apply a more deferential standard of review to a military department's Privacy Act determination regarding military records.[1] We have no need to address that contention, however, as Mueller's claim fails even under the de novo standard.

---

[1] In support of this contention, the government cites *Cargill v. Marsh*, 902 F.2d 1006 (D.C. Cir. 1990), in which we affirmed the dismissal of an Army officer's suit to amend his military records under the Privacy Act, because he had failed to exhaust his administrative remedies before the Army Board for Correction of Military Records. In so holding, we noted that permitting the plaintiff "to obtain *de novo* judicial review of his challenge to the Army's interpretation of its regulation governing tuition reimbursement simply by choosing to seek amendment of his records under the Privacy Act, before the Army Privacy Review Board, rather than by proceeding before the Correction Board, is inconsistent with the heightened deference Congress intended the courts to accord determinations of the Correction Board in proceedings under 10 U.S.C. § 1552(a)." *Id.* at 1008.

It is well-established that, "generally speaking, the Privacy Act allows for correction of facts but not correction of opinions or judgments." *McCready*, 465 F.3d at 19 (internal quotation marks omitted); *see Kleiman v. Dep't of Energy*, 956 F.2d 335, 337-38 (D.C. Cir. 1992) ("[T]he Privacy Act allows for amendment of factual or historical errors. It is . . . not a vehicle for amending the *judgments* of federal officials or . . . other[s] . . . as those judgments are reflected in records maintained by federal agencies." (internal quotation marks omitted)). If a subjective judgment is "based on a demonstrably false" factual premise, however, the Privacy Act compels the agency to correct or remove the judgment from the complaining individual's record. *White*, 787 F.2d at 662; *see R.R. v. Dep't of the Army*, 482 F. Supp. 770, 774 (D.D.C. 1980).

The original fitness report prepared by Admiral Weiss is a classic statement of an author's subjective judgment about an individual's performance. In the contested portions of the report, Weiss offers nothing more than his appraisal of Mueller's relative performance in a variety of categories during the covered period, as well as his recommendation regarding promotion. *See White*, 787 F.2d at 662 (describing a superior's performance evaluation as an opinion or judgment for Privacy Act purposes); *see also Hewitt v. Grabicki*, 794 F.2d 1373, 1378 (9th Cir. 1986). Although the ratings in the supplemental report are different from those in the original, they are still judgments -- different judgments, but judgments nonetheless.

Mueller argues that the original fitness report is subject to correction under the Privacy Act because the facts upon which it was based "were expressly and emphatically discredited by RADM Weiss -- the very person who had erroneously relied upon them in the first place." Plaintiff's Br. 21. To be sure, Weiss did state that the supplemental report was "based upon new information that [he] received from both LCDR Mueller

and from his direct supervisor," and that this "new information convinced [him] that the contested original fitness report was inaccurate and needed to be corrected." J.A. 88. Weiss also stated that the "original fitness report contained evaluation information based upon factual inaccuracies." *Id*. But Weiss never described the "new information" or "factual inaccuracies" to which he referred. Nor is there such a description in Mueller's briefs in either this court or the district court. *See also* Oral Arg. Recording at 8:00 (statement by Mueller's counsel that he does not know what new information caused Weiss to change his mind). There is, therefore, no way to determine whether the inaccuracies Weiss discerned were errors of fact or opinion.

Acknowledging that Weiss failed to state the nature of the new information he received, or of the inaccuracies he discerned in his original report, Mueller's brief states:

> [I]t is entirely possible that RADM Weiss could not articulate reasons for his actions. That is because subjective evaluations are necessarily premised on "facts" of all shapes and sizes. Some are objective and identifiable, like a person's weight or score on a test. Others are more subliminal and indefinable, like perceptions and impressions.

Plaintiff's Br. 18. This description of what underlay Weiss' different evaluations may well be correct. But even if it is, it dooms Mueller's Privacy Act claim. As we have previously held, "[w]here a subjective evaluation is based on a multitude of factors, . . . and there are various ways of characterizing some of the underlying events, . . . it is proper [for an agency] to retain and rely on it." *White*, 787 F.2d at 662. Accordingly, we affirm the district court's grant of summary judgment to the Navy on the Privacy Act claim.

III

We next consider Mueller's challenge, brought under the APA, 5 U.S.C. § 706(2)(A), to the BCNR's denial of his request to have the original fitness report removed from his record. The Secretary of a military department, acting through a civilian board, "may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a). Although the federal courts have "jurisdiction to review decisions of [military] Correction Board[s], we do so under an 'unusually deferential application of the "arbitrary or capricious" standard' of the APA." *Musengo v. White*, 286 F.3d 535, 538 (D.C. Cir. 2002) (quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)); *see Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000). "This deferential standard is calculated to ensure that the courts do not become a forum for appeals by every [officer] dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." *Cone*, 223 F.3d at 793. This court reviews de novo the district court's ruling that the BCNR did not act arbitrarily or capriciously in this case. *Musengo*, 286 F.3d at 538.

Mueller contends that the BCNR's decision to retain the original fitness report in his record was arbitrary because Weiss' supplemental report and subsequent sworn statement establish that it was inaccurate. As noted in Part II, however, Admiral Weiss did not identify a single factual inaccuracy in the original report. There was therefore nothing arbitrary about the BCNR's determination that it was "unable to find specific information to justify the reporting senior's revision of [Mueller's] evaluation," and nothing unreasonable about its conclusion that "the evidence submitted was insufficient to establish the existence of probable material error or injustice." J.A. 64.

Mueller insists that, even if Weiss' evaluations were subjective, his submission of a supplemental report establishes that his original evaluation was incorrect. Mueller argues that "Weiss[,] who actually generated the report, admitted its inaccuracy." Plaintiff's Br. 16. This "inaccurate" report, Mueller contends, caused him harm because it "portray[ed] him as a mediocre officer whose performance was in decline when, in fact, he was a stellar officer whose performance was as top-notch as always." *Id.* at 17.

Under Navy regulations, the BCNR "relies on a presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties." SECNAVINST 5420.193 at § 3(e)(2). As we explained in *Cone v. Caldera*, the military generally takes the position that post-hoc reevaluations by reporting seniors are insufficient to overcome that presumption of regularity, based on the "understanding that raters may attempt to retract otherwise accurate assessments when requested to do so by their disappointed officers." 223 F.3d at 794. We have repeatedly reaffirmed the reasonableness of that position. *See id*.; *Musengo*, 286 F.3d at 539-40. And that is the position the BCNR took here, adopting the view of the Navy Personnel Command that it should "not support changes of record to improve an[] officer's opportunity for promotion or career enhancement." J.A. 49; *see* J.A. 64 (BCNR decision, "substantially concurr[ing]" in the Navy Personnel Command's view).

In this case, the Navy accepted Weiss' late-filed supplemental fitness report and, in accordance with Navy regulations, retained both the original and the supplemental report (as well as Weiss' cover letter explaining the reasons for the supplemental report) in Mueller's record for future

promotion boards to consider. *See* BUPERSINST 1610.10 at ¶ P-8(a); *see also* J.A. 49 (Navy Personnel Command advisory opinion); J.A. 63 (Mueller statement acknowledging that this is Bureau of Naval Personnel practice). Where the BCNR has no more evidence than it had here to determine whether a reviewer changed his report out of sympathy for a disappointed officer, there is nothing arbitrary about retaining both reports and permitting future promotion boards to give each report the credit they believe it deserves. Mueller may be right that future promotion board members "would likely surmise from their own experience that the change was at [the subject officer's] request," J.A. 37, but here such a surmise would be correct. It likewise may be true that retaining both reports "leaves a record that a board member could, and probably would, construe as a flaw in [the officer's] record." *Id.* But this court lacks the expertise, not to mention the authority, to substitute its own judgment about the validity of such a construction for that of either the BCNR or a future promotion board member.

IV

Finally, we address Mueller's challenge to the Navy's refusal to convene a special selection board for FY-02. The Secretary of a military department is authorized, upon a finding of "material unfairness" to a person passed over for promotion by a regularly-scheduled promotion board, to "convene a special selection board . . . to determine whether that person . . . should be recommended for promotion." 10 U.S.C. § 628(b)(1). A federal court has authority to "review a determination by the Secretary of a military department . . . not to convene a special selection board." *Id.* § 628(g). A court "may set aside the Secretary's determination," however, "only if the court finds the determination to be," inter alia, "(i) arbitrary or capricious [or] (ii) not based on substantial evidence." *Id.*

The district court held, and the government now argues, that since (as we have decided above) neither the Privacy Act nor the APA requires the Navy to remove the original fitness report from Mueller's record, a special selection board "would have nothing new or different to consider, and this claim is moot." *Mueller*, 404 F. Supp. 2d at 55 n.3. But this misapprehends Mueller's argument. The statute allows the Secretary to convene a special selection board if the original promotion "board did not have before it for its consideration material information," 10 U.S.C. § 628(b)(1)(B), and provides that, once convened, the special selection board "shall consider the record of the person whose name was referred to it for consideration as that record, if corrected, would have appeared to the board that considered him," *id.* § 628(b)(2). As Mueller notes, the FY-02 promotion board did not have access to Weiss' supplemental report because it was not submitted until after the FY-02 board made its decision. Hence, if his request for a special selection board were granted, although the board would still have the original fitness report, it would also have something new to consider: the more favorable supplemental report.

Mueller's claim is therefore not moot. Nonetheless, it is without merit. Navy regulations state that a "special selection board will not be convened to consider any officer who, through the exercise of reasonable diligence, might have discovered and corrected the error or omission in the official record prior to convening the promotion selection board that considered, but did not select the officer." SECNAVINST 1401.1B at ¶ 6(b). The Navy found that Mueller did not meet this due diligence requirement, and therefore declined his request to convene a special selection board.

In concluding that Mueller failed to exercise reasonable diligence in trying to correct his record before the FY-02 promotion board met, the Navy relied on the following facts:

Although Admiral Weiss issued the original fitness report on November 16, 1999 -- well in advance of the FY-02 promotion board that met on April 17, 2001 -- Mueller made no documented effort to correct his record until his January 14, 2002 letter to Weiss, eight months after the board convened. Indeed, Mueller's correspondence with the FY-02 board did not suggest that he was attempting to correct his record. *See* J.A. 73-74. And this was so notwithstanding the fact that he received another fitness report from Weiss six months after the one in question, still well before the FY-02 board met. Although Mueller points to other evidence indicating that he tried, but failed, to connect with Weiss due to their busy schedules, the Navy considered and rejected that argument. *See* J.A. 109 ("While the reporting senior's letter of 16 October 2003 indicates his late submission of the supplemental report was due to the inability of you and the reporting senior to 'connect,' the [BCNR] was not persuaded that you could not have submitted a letter to him before the promotion board met.").

There may have been sufficient evidence for the Navy to conclude that Mueller satisfied the due diligence requirement. But it was also reasonable for the Navy to reach the opposite conclusion. That being the case, we cannot find the Board's refusal to convene a special selection board arbitrary, capricious, or unsupported by substantial evidence. *See, e.g.*, *Morall v. DEA*, 412 F.3d 165, 176 (D.C. Cir. 2005) ("In applying the substantial evidence test, we have recognized that an agency decision may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view." (internal quotation marks omitted)); *Air Canada v. Dep't of Transp.*, 148 F.3d 1142, 1153 (D.C. Cir. 1998) (holding that, although the petitioners' position "may be reasonable, there is nothing unreasonable about the Department's alternative view").

17

V

For the foregoing reasons, the district court's grant of summary judgment in favor of the Navy is

*Affirmed.*