STATE OF MINNESOTA

IN SUPREME COURT

A12-2062

Court of Appeals                                                            Stras, J.

Todd Schwanke,

                    Respondent,

vs.                                                                Filed:  August 6, 2014
                                                            Office of Appellate Courts
Minnesota Department of Administration,

                    Appellant.

_____

Richard T. Wylie, Minneapolis, Minnesota, for respondent.

Lori Swanson, Attorney General, Jacob Campion, Assistant Attorney General, Saint Paul, Minnesota, for appellant.

Margaret A. Luger-Nikolai, Nicole M. Blissenbach, David M. Aron, Saint Paul, Minnesota, for amicus curiae Education Minnesota.

Susan L. Naughton, Saint Paul, Minnesota, for amici curiae League of Minnesota Cities, Association of Minnesota Counties, Minnesota Inter-County Association, Minnesota Sheriffs' Association, and Minnesota School Boards Association.

_____

S Y L L A B U S

1.     Because the respondent's performance evaluation contains "government data," as defined by the Minnesota Government Data Practices Act, Minn. Stat. ch. 13 (2012), he could challenge his performance evaluation for "accuracy or completeness" under Minn. Stat. § 13.04, subd. 4(a).

1

2.     Although the respondent could not raise new challenges to his performance evaluation in an administrative appeal to the Department of Administration, he could introduce new evidence that he had not previously presented to his government employer.

3.     The Department of Administration lacked authority to dismiss the respondent's challenges without first having resolved them informally or conducted a contested-case proceeding.

Affirmed.

O P I N I O N

STRAS, Justice.

Respondent Todd Schwanke, a sergeant in the Steele County Sheriff's Office, challenges his 2011 performance evaluation for accuracy and completeness under the Minnesota Government Data Practices Act, Minn. Stat. ch. 13 (2012).  We conclude that Schwanke can challenge the "accuracy or completeness" of his performance evaluation under Minn. Stat. § 13.04, subd. 4(a).  We further conclude that the Minnesota Department of Administration erred when it summarily dismissed Schwanke's administrative appeal in its entirety.  We therefore affirm and remand for further proceedings consistent with this opinion.

I.

In 2012, the Chief Deputy of the Steele County Sheriff's Office evaluated Schwanke's performance during 2011 and gave him a generally negative review.  The Chief Deputy used a written form listing standardized criteria on which to evaluate officers like Schwanke.  The form asked the reviewer to rate the officer's performance on

2

23 different criteria. If the reviewer could not rate the employee with respect to a particular criterion—either because the criterion did not apply, or because the reviewer lacked sufficient information to give a rating—the reviewer could indicate that he or she would not provide a rating. The form also contained a space for explanatory comments by the reviewer on each of the 23 criteria. The Chief Deputy evaluated Schwanke on most of the criteria and commented on all but one of the ratings.

Schwanke disagreed with parts of the evaluation and wrote a letter to Steele County describing the grounds for his disagreement. In the letter, Schwanke specifically disputed the Chief Deputy's comments and ratings on several criteria and the Chief Deputy's refusal to provide ratings on other criteria. He requested that the County correct those items and that it notify any past recipients of the evaluation about the corrections. Schwanke sent the letter to the Steele County Human Resources Office, and the letter was then forwarded to the Steele County Sheriff, who declined to make any changes to Schwanke's evaluation after concluding that the evaluation was accurate and complete.

Schwanke filed an appeal of the Sheriff's decision with the Minnesota Department of Administration ("Department") by submitting a statement explaining why he disagreed with portions of the performance evaluation. The statement addressed some criteria that his initial letter to the County had not. Schwanke also submitted additional documentary evidence with his statement. The Department "d[id] not accept" Schwanke's appeal, explaining that a challenge under the Minnesota Government Data Practices Act ("Data Practices Act") is not the proper vehicle for a public employee to dispute a performance

3

evaluation. The court of appeals reversed the Department's decision and remanded the case for informal resolution or a contested-case proceeding under the Data Practices Act. *Schwanke v. Minn. Dep't of Admin.*, 834 N.W.2d 588, 593, 596 (Minn. App. 2013). We granted the Department's petition for review.

II.

The legal issues in this case arise out of the Department's decision to summarily dismiss Schwanke's appeal. The Department defends its decision on three grounds. First, the Department asserts that Schwanke's performance evaluation contained only subjective judgments and opinions that are not subject to challenge under the Data Practices Act. Second, the Department argues that it properly dismissed Schwanke's appeal, at least in part, because the appeal raised new challenges and relied on new evidence that did not appear in Schwanke's letter to the County. Third, the Department claims that it has broad statutory authority to dismiss an administrative appeal brought under the Data Practices Act. Each of these legal arguments presents a question of statutory interpretation that we review de novo. *See, e.g.*, *Larson v. State*, 790 N.W.2d 700, 703 (Minn. 2010).

A.

The Department's first argument is that the subjective judgments and opinions in Schwanke's performance evaluation cannot be challenged under the Data Practices Act. Under the Data Practices Act, "[a]n individual subject of the data may contest the accuracy or completeness of public or private data." Minn. Stat. § 13.04, subd. 4(a). The "individual subject of the data" is Schwanke, who is the "subject of stored private or

4

public data." *Id.*, subd. 3. The type of data at issue here is "[d]ata on individuals," which, with certain exceptions that are not relevant here, are "all government data in which any individual is or can be identified as the subject of that data." Minn. Stat. § 13.02, subd. 5.

The Department does not dispute that the information contained within Schwanke's performance evaluation is "data." "Data" are "[f]acts that can be analyzed or used in an effort to gain knowledge or make decisions" or, more broadly, are "information." *The American Heritage Dictionary of the English Language* 462 (5th ed. 2011); *see also Webster's Third New International Dictionary* 576-77 (1976) (defining "data" as "material serving as a basis for discussion, inference, or determination of policy" or "detailed information of any kind"). Schwanke's performance evaluation, which describes his work activities and behavior for use in personnel decisions, fits within the plain and ordinary meaning of "data."

The Department also does not dispute that the County, as a political subdivision of the State of Minnesota, qualifies as a "government entity," which is defined by the Data Practices Act as "a state agency, statewide system, or political subdivision." Minn. Stat. § 13.02, subd. 7a. Because the County is a government entity, its data on Schwanke qualify as "government data"—that is, "data collected, created, received, maintained or disseminated by any government entity regardless of [the data's] physical form, storage media or conditions of use," *id.*, subd. 7—subject to regulation under the Data Practices Act. *See* Minn. Stat. § 13.01 (stating that the Data Practices Act applies to "[a]ll

5

government entities" and "regulates the collection, creation, storage, maintenance, dissemination, and access to government data in government entities").

Accordingly, the Department does not claim that the data in this case is exempt from regulation under the Data Practices Act. Rather, the Department argues that Schwanke's performance evaluation contains only subjective judgments and opinions that are not subject to challenge for "accuracy or completeness" because it is impossible to show that subjective judgments or opinions are inaccurate or incomplete. We disagree with the Department's categorical approach.[1]

The Department's position treats all subjective opinions and judgments the same way, even if those opinions and judgments rest on statements of fact that are objectively verifiable, and thus falsifiable—that is, "capable of being proved false," *Webster's Third New International Dictionary* 820 (1976). A straightforward example will reveal the flaw in the Department's approach. Suppose that a supervisor completes a performance evaluation of a city employee that reads, "the employee's refusal to participate in a team-building exercise at a staff retreat shows that he is not a team player." Suppose further that the employee actually *did* participate in the team-building exercise. It was a different employee who refused to participate, and the supervisor simply confused the two employees. The statement that the employee "is not a team player" is a subjective

---

[1] The Department urges us to defer to its interpretation of subdivision 4(a), despite its failure to argue that the statute is ambiguous. We have been clear, however, that we owe no deference to an agency's interpretation of an unambiguous statute. *See St. Otto's Home v. Minn. Dep't of Human Servs.*, 437 N.W.2d 35, 39-40 (Minn. 1989). In this case, the statute at issue is unambiguous, so the case raises only "legal question[s]" of statutory interpretation that are subject to de novo review by this court. *Id.* at 39.

6

assessment that, standing alone, is not objectively verifiable. But the stated basis for the subjective assessment—that the employee refused to participate in the team-building exercise—is a verifiable, falsifiable statement of fact. Accordingly, the employee can challenge the accuracy of the statement that his "refusal to participate in a team-building exercise at a staff retreat shows that he is not a team player" because the subjective statement about not being a team player rests on a factual assertion that does not "[c]onform[] to fact."[2] *The American Heritage Dictionary of the English Language* 12 (5th ed. 2011) (defining "accuracy"); *accord Webster's Third New International Dictionary* 13-14 (1976) (defining "accuracy" as "freedom from mistake or error" or "conformity to truth or to some standard or model"); *see also* Minn. Stat. § 13.04, subd. 4(a).

The same is true for Schwanke's performance evaluation. Schwanke alleges in his appeal that some of the data in his performance evaluation rest on facts that he can show to be false. For example, Schwanke's performance evaluation states that Schwanke was "asked" to create a sergeants' FTO program, a type of field training program, but Schwanke claims that he "was never asked to put together a sergeants' FTO program." Whether Schwanke was asked by a supervisor to create a field training program is a fact that is capable of being proven true or false. Thus, some of Schwanke's challenges to his

---

[2] Similarly, subjective opinions and judgments can lack "completeness" under Minn. Stat. § 13.04, subd. 4(a), if they are missing essential facts. *See The American Heritage Dictionary of the English Language* 377 (5th ed. 2011) (defining "complete" as "[h]aving all necessary or normal parts, components, or steps"); *accord Webster's Third New International Dictionary* 465 (1976).

7

performance evaluation contest the accuracy or completeness of falsifiable statements. Those challenges, which contest the "accuracy or completeness of public or private data," are within the purview of Minn. Stat. § 13.04, subd. 4(a). *Cf. Mueller v. Winter*, 485 F.3d 1191, 1197 (D.C. Cir. 2007) (positing that "the Privacy Act compels the agency to correct or remove"—as inaccurate—"a subjective judgment [that] is 'based on a demonstrably false' factual premise" (quoting *White v. Office of Pers. Mgmt.*, 787 F.2d 660, 662 (D.C. Cir. 1986))).

Yet mere dissatisfaction with a subjective judgment or opinion cannot support a challenge under the Data Practices Act. To the extent that some of Schwanke's challenges to his performance evaluation reflect his dissatisfaction with the evaluation, rather than specifically contest facts that are incomplete or inaccurate, those challenges would be subject to dismissal in a contested-case proceeding. At this stage of the proceeding, however, because Schwanke's appeal contests statements that *could* be proven false, we disagree with the Department's position that Schwanke's appeal categorically falls outside the scope of Minn. Stat. § 13.04, subd. 4(a).

B.

The Department's second argument is that dismissal was appropriate because Schwanke's appeal raised new challenges and relied on new evidence that he did not first present to the County for its consideration. The Department essentially seeks a rule that would procedurally bar an individual from raising new issues or presenting new evidence in an appeal brought under the Data Practices Act. The Department's argument raises two distinct questions: what *issues* a party may bring in an appeal and what *evidence* a

8

party may use to support its argument on those issues. We consider each question separately.

1.

In his appeal, Schwanke challenges three items on his performance evaluation—specifically, the Chief Deputy's responses to questions 6, 21, and 23—that he did not contest in his letter to the County. The Department is correct that the Data Practices Act does not permit Schwanke to challenge those items for the first time on appeal.

The scope of appellate review is defined by Minn. Stat. § 13.04, subd. 4(a), which states that "[t]he determination of the responsible authority may be appealed." The statute's language specifies what "may be appealed": a "determination of the responsible authority." In this case, the "responsible authority" was the Sheriff, *see* Minn. Stat. § 13.02, subd. 16(b), so Schwanke's right to appeal was limited to any "determination[s]" made by the Sheriff.

The Data Practices Act does not define the term "determination," but it does identify what a "determination" includes. Upon receiving a challenge, the responsible authority must take one of two actions: "correct the data" or "notify the individual that the authority believes the data to be correct." Minn. Stat. § 13.04, subd. 4(a). Whichever action the responsible authority takes constitutes its "determination." *Id.* Both possibilities link the responsible authority's determination to "the data" contested by an individual. Accordingly, a "determination" must relate to specific data—that is, information—rather than to the government record in which the data appear. *See The*

9

*American Heritage Dictionary of the English Language* 462 (5th ed. 2011) (defining "data" broadly as "information").

As relevant here, the Sheriff's determination was limited to the data in the performance evaluation that Schwanke had contested in his letter to the County. Those data did not include items 6, 21, and 23, because Schwanke did not contest those items in the letter. Thus, because the "responsible authority" did not make a "determination" on items 6, 21, and 23, Schwanke had no "determination" from which to appeal on those items. Minn. Stat. § 13.04, subd. 4(a). Even so, Schwanke's failure to previously challenge these three items in his letter to the County did not provide a basis for the Department to dismiss Schwanke's entire appeal.

2.

In contrast to the Data Practices Act's treatment of new issues, neither the Data Practices Act nor the Administrative Procedure Act ("APA") confines Schwanke's appeal to only the evidence that he previously presented to the County. The Data Practices Act itself is silent on what evidence is admissible in an appeal from the determination of a responsible authority. *See* Minn. Stat. § 13.04, subd. 4(a). It does, however, refer to "the provisions of the Administrative Procedure Act relating to contested cases," *id.*, several of which demonstrate that the record in a contested-case proceeding is not limited to the evidence disclosed prior to the appeal. In fact, the APA affirmatively states that "*[a]ll* evidence . . . of which [the agency] desires to avail itself or *which is offered into evidence by a party* . . . shall be made a part of the hearing record of the case." Minn. Stat. § 14.60, subd. 2 (2012) (emphasis added); *see also* Minn. Stat. § 14.58 (2012) (providing

10

that the record in a contested-case proceeding "shall include subsequent filings, testimony and exhibits"). The APA also lists reasons for an administrative law judge ("ALJ") to exclude evidence from a contested-case proceeding, but a failure to disclose the evidence before filing an appeal is not among them. Minn. Stat. § 14.60, subd. 1 (2012) (listing incompetence, irrelevance, immateriality, and repetition). Accordingly, contrary to the Department's argument, the fact that Schwanke relied on new evidence in his appeal provides no support for the Department's decision to dismiss the appeal.

## C.

The Department's third argument is that the APA and the Data Practices Act separately vest the Department with the authority to dismiss any appeals that fall outside the scope of the Data Practices Act. Once again, we disagree with the Department's position.

### 1.

First, the Department argues that the APA assigns it the role of ultimate "decision-maker" in contested-case proceedings, and that the power to decide the appeal must necessarily include the power to dismiss the appeal. The Department is correct that the APA vests it with the ultimate authority to decide Schwanke's appeal. *See* Minn. Stat. §§ 14.61, subd. 1, .62, subd. 1 (2012). But that is not all that the APA does. It also sets forth a detailed procedure that governs contested-case proceedings, including the assignment of an ALJ, who presides over the contested-case hearing, prepares a report, and gives the parties an opportunity to respond. *See* Minn. Stat. §§ 14.50, .57(a), .58, .61, subd. 1, .62, subd. 1 (2012).

11

The procedural requirements of the APA are mandatory: the APA states that a decision "shall not be made" by an agency until the ALJ has made its recommendation. Minn. Stat. § 14.61, subd. 1. The use of the word "shall" in a statute denotes a duty that is mandatory, *see Dukowitz v. Hannon Sec. Servs.*, 841 N.W.2d 147, 155 (Minn. 2014), and nothing in the APA allows the Department to simply disregard the detailed procedures in the APA to decide the case on its own.[3] *See* Minn. Stat. § 14.57(a) ("Unless otherwise provided by law, an agency shall decide a contested case *only* in accordance with the contested case procedures of the Administrative Procedure Act." (emphasis added)).

2.

Second, the Department argues that the Data Practices Act vests it with the authority to dismiss an appeal. Specifically, the Department relies on the following language from Minn. Stat. § 13.04, subd. 4(a):

> The determination of the responsible authority may be appealed pursuant to the provisions of the Administrative Procedure Act relating to contested cases. Upon receipt of an appeal by an individual, the commissioner shall, before issuing the order and notice of a contested case hearing required by [the APA], try to resolve the dispute through education, conference, conciliation, or persuasion. If the parties consent, the commissioner may refer the matter to mediation. Following these efforts, the commissioner shall dismiss the appeal or issue the order and notice of hearing.

---

[3] Even the Department's own rule implementing Minn. Stat. §13.04, subd. 4(a), recognizes that only "[t]he administrative law judge"—*not* the Department—"may recommend dismissal of any sham, capricious, or frivolous case, or any case not within the jurisdiction of the Department of Administration." Minn. R. 1205.1600, subp. 4 (2013).

12

According to the Department, the final sentence in the provision "expressly allows [it] to dismiss appeals without a contested case hearing."

Read in isolation, the final sentence in subdivision 4(a) appears to support the Department's interpretation. However, we do not read a single sentence of a statutory provision in isolation. Rather, we have long recognized that "[w]ords and sentences are to be understood . . . in light of their context" and are "not to be viewed in isolation." *Christensen v. Hennepin Transp. Co.*, 215 Minn. 394, 409, 10 N.W.2d 406, 415 (1943).

In this case, the sentence relied upon by the Department appears in a paragraph that simultaneously grants a right to a contested-case proceeding and requires the Department (acting through the Commissioner of Administration) to temporarily delay the proceeding in an attempt to resolve the dispute informally. *See* Minn. Stat. § 13.04, subd. 4(a). The attempt to obtain an informal resolution of the dispute will result in one of two outcomes: either the attempt will succeed and there will be no need for a contested-case proceeding, or the attempt will fail and there will be no reason to delay the proceeding further. The final sentence then simply accounts for the two possibilities by directing the Department to take the appropriate next step in each situation: if it resolves the dispute informally, the Department "shall dismiss the appeal," and if it does not, the Department shall "issue the order and notice of hearing" to initiate a contested-case proceeding. *Id.* Read in light of the rest of the paragraph, the only reasonable reading of the final sentence is that it authorizes the Department to dismiss the appeal, but *only* if the Department first succeeds in resolving the dispute informally. It is unreasonable to read the provision more broadly as giving the Department an unqualified and unreviewable

power to dismiss any appeal brought under the Data Practices Act, especially in light of the directive to conduct the appeal "pursuant to" the APA's detailed and mandatory contested-case provisions. *Id.*

## III.

For the foregoing reasons, we affirm the decision of the court of appeals and remand to the Department for further proceedings consistent with this opinion.[4]

Affirmed.

---

[4] The Department and several amici suggest that allowing Schwanke's appeal to proceed will have undesirable consequences. We express no opinion on these policy concerns other than to say that nothing in our decision today precludes the Legislature from responding by amending the Data Practices Act.